## BADEAU *vs.* MEAD and HOLMES.

Where a grantor bounds the land which he conveys, by roads, whether existing or to be made, over lands retained by him, he conveys to the purchaser, as incident to the grant, a right to use such roads as described, *when they adjoin the premises*, and, *if necessary*, out to the common highway. Such right becomes appurtenant to the land conveyed.

But, although an appurtenance may well be over an *adjoining* tract of land, because there may be the requisite connection, yet it cannot extend to separate and distinct premises. Any privilege over them is a distinct subject. It is not in any manner dependent upon, nor absolutely necessary for, the use of the principal thing granted. If it passes at all it must be by a specification of it as a distinct subject, and not as an adjunct of something with which it has no connection. BROWN, J. dissented.

Badeau v. Mead.

The decisions relative to the dedication to the public of city lands, are not, to the extent to which they go, applicable to rural property.

Although there are cases where parties who have induced others to act upon representations designed for the purpose may be compelled to make those representations good, yet such assertions must be of something existing at the time, and their falsity must be prejudicial to the legal interests of the one who seeks redress. *Per* S. B. STRONG, J.

No one can call for the redress of an injury to others, whether they be individuals or the public, unless his own rights are invaded. Neither can one be required to carry into effect his expressed intentions as to the future, unless he has directly promised to do so; and then only by one legally interested in the performance of the promise. *Per* S. B. STRONG, J.

Where it is not claimed or proved that an alledged dedication of streets to the public, was ever accepted; or that, if effectually made, an owner of property in the neighborhood, which he has purchased from the person making the dedication, has any private interest in the streets dedicated; or that he was induced to make his purchase by the assertion of any thing by the vendor, as to the present, or the promise of any thing as to the future, the mere fact that such streets were laid down as such upon a map of the vendor's property, to which reference was made at the time of the sale, and in the deed, will not entitle the purchaser to an injunction to restrain the vendor, and persons claiming under him, from shutting up or obstructing such streets.

THE defendant Mead owned a piece of ground in 1849, adjacent to the village of New Rochelle, and bounded on one side by the road from that village to White Plains, and on another side by the New-York and New Haven railroad. This piece of ground the defendant Mead caused to be surveyed and laid out into village lots, for the purpose of selling the same at auction. A map of the ground was made and filed in the office of the clerk of the county of Westchester, which map was afterwards referred to, in subsequent conveyances, for descriptions of the lots sold. On this map were laid down three streets, named Garden-street, Cottage avenue and Orchard-street. The lots were offered at auction, on the 27th of June, 1849, when lithographic copies of the map filed, were exhibited to purchasers, and it was then proclaimed by the auctioneer to purchasers that the defendant, Mead, would cause the streets laid down upon the map to be worked by the 1st September, 1849. At this

sale the plaintiff became the purchaser of lot No. 4, on the map, situate at the junction of Garden-street and Cottage avenue, which in pursuance of the sale was conveyed to him, by the plaintiff, by deed bearing date 1st August, 1849, and the purchase money was fully paid in cash. The conveyance was the usual full covenant deed, and in it the description of the lot was as follows: "All that certain *lot*, piece or parcel of land, situate, lying and being in the town of New Rochelle, county of Westchester and state aforesaid, known and distinguished on a map of property belonging to Charles D. Mead, situate in the town of New Rochelle, county of Westchester and state of New-York, surveyed by Joseph F. Bridges, city surveyor, May 19, 1849, and filed in the office of the clerk of the county of Westchester, July 28th, 1849, by the number four (4,) bounded and described as follows, to wit: commencing at a point on the southerly side of Garden-street, distant three hundred (300) feet easterly side of the road leading from New Rochelle to White Plains, as laid down on said map; running thence southerly along the easterly boundary line of lot number three (3,) on said map, one hundred and eighteen (118) feet to the northerly line of the land belonging to the New-York and New Haven railroad company; thence northeasterly along the northerly line of the land belonging to the New-York and New Haven railroad company, two hundred and forty-seven (247) feet; thence westerly along the southerly line of said Garden-street, two hundred and fourteen (214) feet, to the place of beginning, as laid down on said map, together with all and singular the tenements, hereditaments and appurtenances thereunto belonging, or in any wise appertaining," &c. &c. The plaintiff erected three dwelling houses on his lot No. 4, and afterwards Mead sold to the defendant Holmes, (who purchased with full knowledge of the facts,) all the northerly part of the ground laid down on the map, including the whole of Orchard-street and part of Cottage avenue, and the defendants obstructed and closed up the passage in the whole of both those streets, and Mead put a fence also across the mouth of

Badeau *v.* Mead.

Garden-street, where it enters the White Plains road.(*a*)    Upon these facts the complaint in this action was filed and an injunction obtained to prevent the obstructions.

The injunction was afterwards dissolved by Justice Barculo, on the ground that the plaintiff had no right to have any of the streets, except Garden-street, kept open.

The action was afterwards referred to Judge William Kent, who, on the 14th July, 1851, made his report, that the defendants be enjoined from making or continuing any obstruction in either of the streets or avenues laid down on the map, and requiring Holmes to remove the obstruction on the parts of the streets which he had purchased, and Mead to remove the obstructions in the residue of the streets, and the defendants to pay costs according to this report.    A decree was entered and the defendants appealed.

*E. Sandford,* for the appellants.    1. The plaintiff, in his complaint, has set forth, as the first ground of his claim for relief, an alledged representation made by the defendant Mead, by the map, and its exhibition at the sale, to the plaintiff, that the purchaser or purchasers should have the benefit of the streets and avenues as exhibited on said map, and that the plaintiff be-

(*a*) Diagram of the premises:

came the purchaser of lot No. 4, placing full faith and confidence in such representations. Such an alledged representation, if made, can give no right to or interest in the lands laid down on said map for streets and avenues, to the plaintiff, nor any title to the relief sought by his complaint. ( *Wolfe* v. *Frost*, 4 *Sandf. Ch. R.* 72, 88 *to* 96. *Miller* v. *Auburn and Syracuse Railroad Co.*, 6 *Hill*, 61. *Mumford* v. *Whitney*, 15 *Wend.* 380, 393. *Hewlins* v. *Shippam*, 5 *B. & Cr.* 221. *Cocker* v. *Cooper*, 1 *Cr., M. & Rosc.* 418. 2 *R. S.* 194, §§ 6, 8, 3*d ed.*) II. The second ground of claim for relief is set forth in the description of the premises contained in the conveyance executed by the defendant Mead to the plaintiff. By this description the map is referred to for the number of the lot intended to be conveyed, and then follows a particular description of the property, by metes and bounds. By this description no part of the land contained within Garden-street was conveyed to the plaintiff; the legal title to the whole of the land, which would be embraced within the lines indicated on said map as intended to form Garden-street, remained in the defendant Mead, after the execution of his deed to the plaintiff. ( *Child* v. *Starr*, 4 *Hill*, 369. *Commissioners of Canal Fund* v. *Kempshall*, 26 *Wend.* 404. *Jackson* v. *Hathaway*, 15 *John.* 454. *Storer* v. *Freeman*, 6 *Mass. R.* 435.) III. No right or interest in any land, which would be embraced within the lines indicated on said map as intended to form Cottage avenue and Orchard-street, passed to the plaintff *as appurtenant* to the land granted by Mead to the plaintiff. The utmost that the plaintiff could claim as appurtenant to the land granted, would be an easement or right of way over the lands embraced within the lines of Garden-street, to the road which leads to White Plains. ( *Tyler* v. *Hammond*, 11 *Pick.* 193, 214. *Jackson* v. *Hathaway*, 15 *John.* 447, 54, 55.) IV. There was no dedication of the land indicated on said map as lying within the lines designated as Cottage avenue and Orchard-street, to the use of the public, nor to the use of the plaintiff. No such streets existed in fact. The lands were not located within the limits of any city, by whose municipal acts any such streets could be opened. The map produced at the sale

merely indicated the thoughts of the proprietor at that time, as to the use intended to be made by him of a portion of his lands which he was willing to sell; but he did not enter into any contract, express or implied, by which the lands became either legally or equitably bound, in his hands, to be subjected to such use. The only way by implication, which can be claimed by the plaintiff, from the conveyance to him, is a convenient passage from the property granted, to the public road. The utmost that can be implied from bounding lot No. 4 along Garden-street, is a right to have that street kept open *in front of the plaintiff's lot* for the benefit of light and air, as well as for a mere passage to and from the premises. Urban servitudes are more extensive than rural servitudes. (*Livingston* v. *Mayor of New-York*, 8 *Wend.* 85, 98. *Wyman* v. *Mayor of New-York*, 11 *Id.* 487, 92, 94. *Underwood* v. *Stuyvesant*, 19 *John.* 186. *Hammond* v. *McLachlan*, 1 *Sandf. Rep.* 343. *City of Cincinnati* v. *White*, 6 *Peters*, 431 *to* 438. *Hunter* v. *Trustees of Sandy Hill*, 6 *Hill*, 407 *to* 412.) V. The plaintiff has not shown any express covenant or grant that he shall have the use of Cottage avenue and Orchard-street. An implied covenant, or an implied grant, are not sufficient, for the former is abolished by the revised statutes, and the latter is never applied to ways not *in esse* at the time of the conveyance, except it be a way of necessity. (*Borden* v. *Manchester*, 4 *Mason's R.* 112. 3 *Bac. Ab.* 387. 2 *Hilliard's Ab.* 63. *Grant* v. *Chase*, 17 *Mass. R.* 447. *Woolrych on Ways*, 16. 2 *R. S.* 22, § 140, 3*d ed.*) VI. The courts of this state, before the revised statutes, held that when a street had no actual existence, although laid down on a map, a covenant was implied in the deed giving a right of way over such street, and that such covenant would only apply to a street upon which a lot sold was bounded. A grant was never implied of a way not *in esse*, except a way of necessity. But since the revised statutes, they have held that where the owner of land adopts a city or town map, and the streets as laid down upon such map, and sells lots bounded upon such streets, he, by the adoption of the map, and the sale of his lots, appropriates or dedicates to the public use the streets upon which

such lots may be bounded. (*Mercer-street*, 4 *Cowen*, 542. *Lewis-street*, 2 *Wend.* 473. *Livingston* v. *Mayor of New-York*, 8 *Id.* 89. *Wyman* v. *Mayor of New-York*, 11 *Id.* 491. *32d street*, 19 *Id.* 129. *29th street*, 1 *Hill*, 190. *39th street*, *Id.* 194.) VII. The plaintiff, by accepting his deed after the time stated when the streets were to be opened, thereby waived his claim to have all of the streets opened. The testimony shows that, at the sale, the auctioneer stated that the streets would be open by the 1st of September, 1849, and that the deed was delivered on the 29th of that month. That Garden-street was opened in the month of August prior to said month of September. Nothing has been done since that time towards opening the other streets.

*W. Silliman*, for the respondent. I. By making the map in question, laying out the streets thereon, filing the map in the county clerk's office, selling according to the map, representing that the streets would be worked by the 1st September, &c., the defendant Mead made the common public use of the streets appurtenant to the lots, and when he conveyed a lot with its appurtenances, the grantee took by positive grant the right to a common public use of the streets, as one of the appurtenances of his lot. (*Matter of* 17*th street*, 1 *Wend.* 262. *Matter of Lewis-street*, 2 *Id.* 472. *Livingston* v. *Mayor of New-York*, 8 *Id.* 85. *Wyman* v. *Mayor of New-York*, 11 *Id.* 486. *Trustees of Watertown* v. *Cowen*, 4 *Paige*, 410. *Hunter* v. *Trustees of Sandy Hill*, 6 *Hill*, 407. *Noyes* v. *Ward*, 19 *Conn. Rep.* 250. *Matter of* 29*th and* 39*th streets*, 1 *Hill*, 189 *and* 192. *Ward* v. *Davis*, 3 *Sandf. S. C. R.* 502. 2 *Smith's Lead. Cas.* 180, *and cases there cited.*) II. If there was not a positive, there was an implied grant of the public use of the street. (*Wyman* v. *Mayor of New-York*, 11 *Wend.* 486.) III. If the plaintiff is not entitled to the public use of the streets, as a positive or implied grant, under the name of appurtenances or otherwise, he is entitled to the same, on the same principle of dedication, the acts of the defendant Mead having amounted to a dedication of the streets to the public use. (*See*

Badeau *v.* Mead.

*cases before cited.*) IV. Acceptance is not necessary to perfect dedication. (*Ward* v. *Davis*, 3 *Sandf.* 502.) V. The decree appealed from is in all respects correct, and the appeal should be dismissed with costs.

S. B. STRONG, J. The plaintiff does not complain of the continuance of the fence across Garden-street, at its junction with the White Plains road, as a grievance, but simply states the fact as a part of his history of the case. Neither does he ask for its removal. It is therefore unnecessary to consider whether such continuance is an infringement of the rights acquired by his deed; and the referee erred in directing the defendant Mead to remove all obstructions in that street. Neither does the complaint rely upon any verbal representations made by Mead, or the auctioneer, at the time of the sale, or in any manner allude to them. Even if such representations had been made and had been set forth in the complaint, they could not have been given in evidence to qualify or extend the plaintiff's right, as they would have been merged in his deed. Such evidence would have been competent had the plaintiff complained of fraud as a cause of action, or as a basis for relief, or had he relied at all upon a dedication of the streets mentioned and described on the map, and its acceptance by the public. But he has done neither.

The essential statements contained in the complaint, and upon which alone the plaintiff must rely in support of his application for redress and relief, are that Mead caused a tract of land, of which the tract or lot conveyed to the plaintiff is a part, to be surveyed, and had a map of it made, on which were designated various lots, which were numbered successively from 1 to 20, and three roads, named Garden-street, which joined the tract purchased by the plaintiff, and passed from that to the White Plains road, which was the nearest highway, and Cottage avenue and Orchard-street; that the map was exhibited by the auctioneer at the time of the sale, and that Mead, by making the survey, running out the lots, streets and avenues, and exhibiting the map previous to and at the time of the sale, represented

that the purchasers should have the use and benefit of such streets and avenues, of the width, extent and location as laid down on such map; that the plaintiff, at such sale, purchased his tract, which was subsequently conveyed to him by a deed referring, in the description of the premises, to the map as filed in the office of the county clerk, and describing the northerly boundary as running along the southerly side of Garden-street, as laid down on the map, two hundred and fourteen feet; that Mead had since sold another part of his tract to the defendant Holmes; that Holmes had commenced making a fence across Cottage avenue at a place on the land conveyed to him, and that Mead has declared his intention of shutting up the avenue and obstructing Orchard-street, and the plaintiff therefore prays that the defendant may be restrained from obstructing the said avenue and street, (referring of course to Orchard-street which had been last named,) and directed to remove existing obstructions in the avenue, and that they should pay the plaintiff's damages.

It is apparent, from this statement, that the plaintiff's whole reliance for relief must be upon his deed and the map to which it refers. He can claim no other, at any rate, in this suit. He does not alledge fraud, and there is no latent ambiguity in either of those papers which would justify the admission of extrinsic evidence to explain them. If those papers do not confer upon the plaintiff all the rights to which, under the circumstances, he is entitled, he can have them reformed, under a proper proceeding instituted for that purpose, but if, without that, he asks for relief, he must take them as they are.

As Mead retained the intervening land between the tract sold to the plaintiff and the highway, the plaintiff would have taken a right of way over such remaining lands, as incident to his grant, had none been specified. If it had not been particularly located and defined in the deed, he would have been entitled to a convenient passway. The description in the deed, or, which is the same thing, the map to which it refers, locates the road, and defines its boundaries; it also, by omitting any limitation, calls for an unobstructed way. I consider it to be well settled

Badeau v. Mead.

that where the grantor bounds the lands which he conveys, by roads, whether existing or to be made, over lands retained by him, he conveys to the purchaser, as incident to the grant, a right to use such roads as described, *when they adjoin the premises*, and, *if necessary*, out to the common highway. Such right becomes appurtenant to the land conveyed. We can, I think, go to that extent—no farther, at least as to rural property. Upon this principle the plaintiff has a right to an unobstructed way to the White Plains road, and can have the fence across Garden-street removed, when he seeks for it in an appropriate proceeding.

But although an appurtenance may well be over an *adjoining* tract of land, because there may be the requisite connection, yet it cannot, for obvious reasons, extend to separate and distinct premises. Any privilege over them is a distinct subject. It is not in any manner dependent upon, nor absolutely necessary for, the use of the principal thing granted. If it passes at all it must be by a specification of it as a distinct subject, and not as adjunct of something with which it has no connection. (1 *Bulstrode*, 17. *Grant* v. *Chase*, 17 *Mass. Rep.* 443. 2 *Metc. Rep.* 457, 464.)

But it is contended by the plaintiff that Mead dedicated the roads laid down on his map to the public, and that as such dedication is referred to in the conveyance to the plaintiff, he has a right, so far as it relates to the defendants, (one being his vendor and the other a subsequent grantee,) to enjoy them as public highways, and to call for a removal of any existing obstruction, and the prevention of new ones. He claims the right as one resulting from his deed, and not merely as a public privilege. The cases quoted by the plaintiff's counsel, on the subject of dedication, have reference to city lands, and are not, to the extent to which they go, applicable to rural property. In the case of *Livingston* v. *The Mayor, &c. of New-York*, (8 *Wend.* 98,) Chancellor Walworth says, "The right of way, as a mere rural servitude, *is confined to a convenient passage from the property granted, to the public road or highway*, and the principles of construction applicable to grants of property in the country,

---

Badeau *v.* Mead.

---

do not apply to conveyances of city lots." In the case of *Wy-man* v. *The Mayor, &c. of New-York,* (11 *Wend.* 486,) Chief Justice Savage said, "The chancellor, in Livingston v. The same defendants, (which I have quoted,) has taken a very proper distinction between grants of property in the country and of city lots. The rules of law applicable to the former are not so to the latter." The property in the case under consideration was in the country, but as it was laid out, and no doubt designed, for village lots, it may be well enough to inquire as to what has been necessarily decided in the cases, on the subject of the dedication of city streets, in the courts of this state. I say *necessarily* decided, because to that extent only can they be considered as binding authority. If we are to be governed by the loose opinions thrown out sometimes by judges, and often by other members of the *late* court of dernier resort, we should have such a medley that there would be all sorts of law upon all controverted subjects. Those cases, when the facts are examined, decide that where a map had been made by the city authorities, and individuals had subsequently conveyed their lots bounded by *streets* as described on the city map; or where individuals had in the first instance made a map of their own lands, locating and describing *streets*, and such streets were afterwards accepted by the public either formally or when the land was open, by using it, there was a dedication of such streets, and the proprietors, when the city authorities should subsequently take formal possession of them, were entitled to only nominal damages. In such cases there could not well be much room for doubt. The proprietors of the lots granted would be entitled, on principles applicable to conveyances as well of country as of city property, to the use of the street as described in front of their respective houses. Subject to such right the interest of the street owner would be worthless. He could not use it at all, for his private emolument, and as when taken fully by the public he would be entitled to only its value to him at the time, the constitutional requisition would be satisfied by giving him a nominal compensation. In both classes of cases to which I have referred, there had been a *mutuality;* the land proprietor had given to the public the land

Badeau *v.* Mead.

for which the public by describing it as a street had asked, or the public had either directly or inferentially, when the land designated as a street was originally, and had continued open, accepted what had been first offered.   There is nothing in these cases to overthrow the well settled rules, that a grant, whether inferential or direct, or whether to the public or to a private individual, is inefficacious until accepted by the grantee ; or that an offer, whether made to an individual or to the public, may be withdrawn at any time before it is accepted; or that a grant to an individual comprehends only the thing granted, with its appendages and appurtenances, and does not extend to other matters with which the property conveyed to him has no immediate connection.   Opinions may have been, and I think were, expressed by some of the members of the court for the correction of errors, that a purchaser of a city lot had an interest in all the streets described in the map of a large tract owned by the vendor, to which a reference was made in his deed ; but that point was not necessarily involved, and any opinion upon it, opposed as it is by well settled principles, cannot be considered as a controlling authority.

The doctrine of dedication has been carried quite far enough, and ought not to be extended.   Persons who have from mere kindness suffered others to enjoy privileges in their lands, have been eventually coerced into parting with them entirely, without compensation, and to yield up as rights what they had previously suffered or allowed as favors, and the simple expression of an intention has often been distorted into a positive promise, and occasionally to those who have no distinct interest in its performance.   Our title to our lands is too important to be lightly lost, upon slight presumptions.   Before the owner should be deprived of his property, his intention to part with it should be clearly and unequivocally expressed.   And for greater certainty it would be better, far better, that to be effective it should be evinced by writing, rather than by doubtful conduct or still more doubtful declarations.

There are undoubtedly cases where parties, who have induced others to act upon representations designed for the purpose, are

Badeau *v.* Mead.

and should be compelled to make those representations good. But such assertions must be of something existing at the time, and their falsity must be prejudicial to the legal interests of the one who seeks redress. No one can call for the redress of an injury to others, whether they be individuals or the public, unless his own rights are invaded. Neither can one be required to carry into effect his expressed intentions as to the future, unless he has directly promised to do so, and then only by one legally interested in the performance of the promise.

In the case under consideration, there is no assertion or evidence that the dedication, if tendered, was accepted by the public, or that if effectually made, the plaintiff so far as it relates to the two streets in question had any private interest in the property dedicated, or that he was induced to make his purchase by the assertion of any thing as to the present, or the promise of any thing as to the future.

Upon the principles which I have laid down, the present action cannot be maintained.

The report of the referee must be set aside, and the judgment entered upon it must be reversed, and judgment given for the defendant.

BARCULO, J. concurred.

BROWN, J. dissented.

Judgment reversed.

[DUTCHESS GENERAL TERM, October 4, 1852. *Barculo, Brown* and *S. B. Strong,* Justices.]