BISSELL and PERKINS, ex'rs &c., *vs.* THE NEW YORK CENTRAL
RAIL ROAD COMPANY.

To constitute a strip of land, laid out as a street, by the proprietor of a tract
of land, a public highway, by force of a *dedication* for that purpose, the
dedication must be *accepted* by the proper public authorities, or there must
be a *user* of the strip as a highway.

The mere surveying, mapping and laying out of the tract, opening the street
and selling lots upon it, does not make such street a public highway.

These acts are evidence of an intention to make a dedication. They import
an incipient dedication, by the owner of the fee, of the strip to the public.
But until the proprietor has sold the lots, or some of them, he can recall the
proposed dedication; and on extinguishing the claims of any grantees to
whom he may have sold lots, he can revoke the dedication at any time before
the public has acquired affirmative rights by the adoption of the proposed
street by some express corporate or official act, or by *user* distinct and une-
quivocal, of such street as a public road or highway.

Express acceptance by the public authorities is not requisite; nor user for a
length of time sufficient to create a title by prescription. User for a short
time, express and unequivocal, treating the strip of land as a street or high-
way, is sufficient.

EJECTMENT to recover possession of a strip of land, 60
feet by 190, in the city of Rochester, in part occupied by
the warehouse of the defendants, and the residue by their road
tracks. There was no dispute that William W. Mumford,
the plaintiff's testator, prior to 1830 owned this land. Wm.
W. Mumford died in 1848. The title of the defendants, who
claimed the premises in fee, depends upon the following facts:
In 1826 or 1827, Mumford, being the owner of a considerable
tract, embracing the premises in dispute, employed Elisha
Johnson to make a survey and map of the tract, laying it out
into village lots, which he did and delivered the map to Mum-
ford. On this map the lands in controversy are laid down as
"Erie street," running east from Kent street, which formed
the western boundary of the Mumford tract. Erie street, on
that map, has adjoining it on the south side, lots 1, 2, 4, 5
and 6, in section G, and on the north side, lots 13, 14, 15, 16,
17 and 18, in section D. No size of lots is given on the map,
but only lines and numbers. Mumford, between **1828 and**

1845, conveyed to different individuals, *all the lots on either side of Erie street,* describing them invariably by their numbers, " reference being had to the allotment and survey made by Elisha Johnson." In some cases the size of the lot was given, as follows : " being 33 feet front and rear, and 99 feet deep." No express mention was made in any of his deeds of any street. Mumford placed that map, or a copy of it, in the hands of agents engaged in selling his lots, and they made sales in reference to it. Through various mesne conveyances, the defendants, prior to the commencement of this suit, had obtained the title to all those lots. Many of the deeds subsequent to Mumford's, describe the lots as bounded on Erie street. As many as 30 years ago, there were houses on both sides of Erie street ; and from that time down to 1848, or later, the occupants of the lots used that street for access to them. Erie street was laid down on Johnson's map across the entire block, from Kent street to Jones street. But as Mumford owned only half the distance, he had no power to dedicate the other half as a street, and it seems never to have been opened through to Jones street, except for a short time. The common council adopted Erie street, as far as it was laid down by Mumford on his land, and at one time proposed continuing it the residue of the distance to Jones street; but finally in March, 1845, abandoned the attempt. At what time that part of Erie street, which was on the land originally owned by Mumford, was closed up, does not appear; but it is now all occupied by the defendants, and one of their buildings covers nearly the whole entrance into it from Kent street. On these facts, the judge on the trial directed a verdict for the plaintiffs, and gave the defendants 60 days to make a case or bill of exceptions, to be heard in the first instance at a general term, with leave to either party to turn it, if a case, into a bill of exceptions.

*S. Mathews,* for the plaintiff.

*H. R. Selden,* for the defendants,

*By the Court,* E. DARWIN SMITH, J. No exceptions having been taken to any decision of the judge upon any question of law, and no request made to him to submit the case to the jury upon any question of fact, his direction to them to find a verdict for the plaintiff cannot be matter of objection or exception here. The questions now presented to the court should therefore be considered as upon a case without exceptions. If we can see upon the whole case that the verdict for the plaintiff was not warranted by the law or the evidence, it will be our duty to order a new trial. What the jury would have been bound to find upon the evidence we must assume to be true, and proved, for the purposes of the examination of the case which the court is now called upon to make. It should be assumed, therefore, I think, that William W. Mumford, the plaintiff's testator, was seised in fee of the premises in question, at the time of his death, unless his title was divested by the dedication thereof to the public, as claimed by the defendants. It appears that Mumford owned one half of a block of ground situated in the city of Rochester, surrounded on all sides by streets open and used as public highways; that he projected the plan of opening a new street through the center of this block of ground, cutting his own land in the center and the land of the adjoining owners also in the center; that he proceeded to map and plot his portion of the block, and in his plot or map laid out such proposed street across his own and the adjoining land; that his portion of such block was laid out into city lots on each side of such proposed street, and fronting thereon; that he proceeded to sell, and did sell, all of such lots by their numbers on said plot, but without any distinct mention of, or reference to, such proposed street by name; that his grantees entered upon such lots and built thereon, and the strip designated as a street was used by them for access to their lots, and was opened so far as Mumford's land extended but never was opened through the other half of such block. It does not appear that the owner of the other half of such block ever plotted his ground into city lots, or

ever in any way assented to the opening of a street through the same, and a fence was kept up by him on the line of division between his portion of such block and that of Mumford. The defendants have acquired all the rights of the grantees of the several lots, and occupy the same and the strip designated as a street on Mumford's plot and survey. There can be no question, I think, on the facts of the case, that Mumford did all that he deemed requisite to dedicate this strip of ground, called Erie street, to the public, and intended such dedication. He opened it of the requisite width for a street, and sold the lots upon it in the customary way in which proprietors of tracts of land in cities open streets for the purpose of cutting up their land into small lots and selling the same to separate owners. His grantees acquired the right to have the strip remain open for the purpose of a street and to be free from any tax or assessment for the fee thereof when the same should be adopted, opened or occupied by the city for the use of the public. By the sale of the lots nothing passed to the several grantees but this right and a perpetual easement over this ground, of egress to and from their lots. The fee did not pass to them by a simple conveyance of the lots by metes and bounds or by their numbers. But if this strip of land had become a public street, then I suppose the inference of law would be that the fee thereof was vested in the owner of the adjoining soil. That is the legal presumption in favor of the owner of lands bounded on a public highway or upon a private stream. This at least is the assumption upon which the defendants rest; claiming that this strip of land had become a public street, and that having acquired the rights of all the private owners of property bounded thereon, they had a right to extinguish the easement and appropriate the property to their own private use as against all persons but the city.

The inquiry then is, whether this strip of land, called Erie street, ever became a public street or highway. And this is the only real point in the cause, as the case is presented to the

court. I think this strip of ground was not a public highway, within the principle decided in *Holdane* v. *The Trustees of the Village of Cold Spring*, (23 *Barb.* 103.) But independently of that case, I think it was not a *highway*, upon well settled principles. In *The City of Oswego* v. *The Oswego Canal Co.*, (2 *Selden*, 264,) Judge Ruggles, giving the opinion of the court of appeals, says, " Streets or roads dedicated by individuals to public use, but not adopted by the public local authorities, or declared highways by statute, are not *highways* within the meaning of the highway acts, and *there is no law by which* any one can be compelled to keep them in repair." Judge Edmonds, in the same case, says there was nothing in the case to show that the streets in question were public highways. " All there was," he says, " upon the subject is, that the owners of the land laid it out in lots, bounding them on those streets. This did not make them streets or public highways." This is really all that has been done in the case before us, and this case in *Selden* is precisely in point on that question. The dedication proposed by Mumford was never consummated. It was initiate in effect—a mere proposition to give the land for a street, as respects the public. The proposed dedication must be *accepted*, to constitute a strip of land laid out as a street by a proprietor of a tract of land a public highway. The mere surveying, mapping, opening and laying it out and selling lots upon the proposed street, does not make it a *public highway*. These acts are evidence of an intention to make a dedication. They import an incipient dedication by the owner of the fee, of the strip to the public. But until a proprietor in such a case had sold the lots, or some of them, he could recall the proposed dedication, and on extinguishing the claims of any grantees to whom he may have sold lots, he could revoke the dedication at any time before the public had acquired affirmative rights by the adoption of the proposed street, by some *express corporate or official act*, or by *user, distinct and unequivocal*, of such street as a public road or highway.

I agree with Judge Wright in the case of *Clements* v. *The Village of West Troy*, (10 *Howard*, 208,) that there had been a sufficient acceptance of the alley in that case ; that *express* acceptance by the public authorities is not requisite, nor user for a length of time sufficient to create a title by prescription. But there must be either an *acceptance* or *user*. User for a short time, express and unequivocal, treating the strip of land as a street or a highway, is sufficient. In *Jarvis* v. *Dean*, (3 *Bing.* 447,) where a street had been used four or five years as a public road, with the assent of the owner of the soil, a dedication was presumed. And in *The City of Cincinnati* v. *White*, (6 *Peters*, 431,) Judge Thompson says, " The user in such a case ought to be for such a length of time that the public accommodation, and private rights, might be materially affected by an interruption of the enjoyment."

I think the case was rightly disposed of at the circuit, and that a new trial should be denied.

[MONROE GENERAL TERM, March 1, 1858. *Johnson, Welles* and *Smith*, Justices.]