THE PEOPLE, *ex rel.* William A. Sale and others, *vs.* THE CITY OF BROOKLYN, in the matter of North Tenth and and North Eleventh streets.

The dedication of land, for the purposes of streets, binds the parties interested, though made by commissioners appointed to make partition between the owners.

And subseqnent conveyances referring to such streets, and including the land to the centre of the street, will be held to convey the land in the street—not as unincumbered property, but as and for the purposes of public streets.

CERTIORARI to review the proceedings of commissioners appointed to open North 10th and North 11th streets in the city of Brooklyn.

Prior to the year 1838, Charles O. Handy, William Sinclair and Silas Butler, were the owners as tenants in common of a large tract of land, embracing the premises in question. In 1838, Silas Butler being then deceased, a suit was commenced in the Court of Chancery by Handy and Sinclair against the heirs of Silas Butler, and an actual partition made among the several parties to the suit. The land lying between First street and the East River, the centre of North 10th street on the south, and the centre of North 11th street on the north, in this partition was allotted to some of the heirs of Silas Butler, through whom the title has passed by several mesne

conveyances to the Messrs. Sale, Poillon and Lawrence, the present owners. The commissioners in partition prepared and filed a map to accompany their report, and on this map North 10th and North 11th streets are shown as streets, and correspond with the streets as laid down on the village map. But all the conveyances from the Butler heirs down, in express terms convey the land in the streets to the centres thereof respectively, and the report of the commissioners in partition conveyed the premises in question in such a manner as to carry the grantees to the centres of said streets, although reference was made to the streets as such. At the time this map was made and filed, the only open or traveled thoroughfare or highway over this property was First street, running north and south and nearly parallel with the East River. The high water mark or line of the East River is shown on this map as being about 100 feet west of the westerly line of said First street. No proceedings were ever taken by the public authorities to open either North 10th or North 11th streets. Neither were these streets ever used by the public, but as appears by the affidavit of Minor H. Keith, the entire block bounded by North 10th and North 11th streets, including the half of each street, has been enclosed by a fence for twenty-nine or thirty years, and has ever since been used and held adversely by the owners and lessees, as against the public, access being had only by a private gate by the permission of the owners and occupants. As before observed, at the time the map in partition was made and filed, the highwater line of the river was near the westerly line of First street; since that time a large portion of the block, including also the part lying in the two streets, has been filled in by the owners, at their private expense, under permission given by legislative acts, and thus a large piece of new upland has been made.

The land lying in the two streets is valued at about twenty thousand dollars, but the commissioners, acting under the advice of the corporation counsel, allowed the owners only

The People *v.* City of Brooklyn.

nominal compensation, on the ground that the making and filing of the map in partition worked a dedication of the land to public use.

On the motion to confirm the report of the commissioners, which was made at special term, before Mr. Justice LOTT, affidavits were read in opposition to those filed on behalf of the relators, in support of the report. These affidavits go to show, that prior to the year 1848 the entire land in the vicinity of the premises in question was an unfenced common. First street being used as a thoroughfare along the river shore, the land between the street and the river being an open shore or beach where the tide ebbed and flowed.

The report was confirmed, Justice LOTT delivering the following opinion :

LOTT, J. " The proof offered by Mr. Dubois in relation to the value of his lands taken for North Twelfth street, is not sufficient to overcome the valuation of the commissioners, assuming that we have the right to consider that question. Mr. Hondlow does not swear that he is acquainted with the value of this land, but if he did, his individual opinion cannot be deemed of greater weight nor entitled to more consideration than the opinion of the three commissioners. Their report should therefore be confirmed.

I am also of opinion that the commissioners correctly decided that the portion of North Tenth and North Eleventh streets, belonging to Richard and Cornelius Poillon, William A. Sale and A. M. Lawrence, referred to in their objections, had been dedicated to public use. The object of the petition referred to in the affidavit of Mr. Lowell, was to dedicate the land laid down as streets on the partition map to public use, and the subsequent conveyances of the land now owned by these objectors, also referred to in that affidavit, must be deemed to convey the land within the lines of these streets not as absolute and unincumbered property, but as and for the purposes of public streets. The other affidavits read in

support of the report show the use of the lands as public thoroughfares.

Objections were also urged on the motion, against the confirmation of the report on North Tenth street, on the ground that their land had been improperly treated in the valuation of it as dedicated to public use. No written objections were filed by them to the report. They therefore cannot properly be heard now. Assuming, however, that it is competent for them to raise that question here, I am satisfied that their objections cannot prevail. The same reasons against it exist as in the case of Poillon and others above considered, but in addition to those, it appears by the affidavits of Mr. Lowell, that in the conveyance of the property to Andrew B. Hodges and others, under whom Marston & Powers derive title, the land within the streets was spoken of as "forming the streets," and was declared to be conveyed, subject to the use of the said land by the public generally as public streets. I will add here, that this deed was executed in 1845, prior to the deed from the same grantors, or a part of them, to Thomas H. Devyr, under whom Poillon and others derive their title. I refer to this fact here as a circumstance to show that North Tenth street, referred to in both these deeds, was treated by the grantors as a public street.

Upon the whole of the facts, I am satisfied that none of the objections are well founded.

Objections overruled, and reports confirmed."

A certiorari was then sued out, and the proceedings removed to the general term of the court.

*A. McCue,* for the relators. I. The dedication must be voluntary, and must be manifested beyond any reasonable doubt. The beneficial ownership in land is not to be destroyed upon mere implication.

II. The filing of the map was the act of the commissioners appointed by the court. It was not the voluntary act of the

parties to the suit. The dedication of these lands to public use was not a matter before the court, nor within its jurisdiction. The acts of the commissioners, therefore, cannot be of any binding obligation on the parties to the suit, or their grantees.

III. As appears from the affidavits filed, the premises in question, in the report of the commissioners, are bounded by the streets, not by the sides of the streets, so that those who became the owners, under the partition, of the land fronting on either street, took the centre of each street respectively.

IV. All the conveyances from the time of the making of the report expressly include the land lying in the streets, shewing no intention on the part of the owners to dedicate the same to public use.

V. Assuming that the filing of the map by the commissioners, and the submission or acquiescence therein of the several parties to the suit, amount to an adoption of the map, still these acts, unaccompanied by any other acts, such as fencing off the land intended to be retained as private land, from that proposed to be given to public use, would only go to shew an intention at some future time to dedicate the lands to public use, and that intention could be legally revoked at any time before the rights of the public or third parties had intervened.

VI. No such rights have intervened. The public authorities have never exercised any acts of authority over these streets; they have never been paved or graded by them. To test the question upon this point : suppose the city of Brooklyn were sued for some accident which had happened on account of the condition of either of these streets, would not the city have a perfect defense in the answer that, by no act of the city, had the city ever accepted the streets, &c. ? If the municipality has incurred no obligations, then, in relation to these streets, can it have acquired any rights in the same ?

VII. Third parties are not any more interested in this claim of dedication than are the public. The relators are the owners

of all the land fronting upon these streets from First street to the river. Harney, whose affidavit is in the case, and who purchased a lot fronting on First street, is not in a condition to claim a dedication ; he purchased upon a highway already opened, to wit, First street. See *Badeau* v. *Mead,* (14 *Barb.* 328,) which establishes the doctrine that the only right of way given by the filing of a map is to the nearest highway, and in relation to the doctrine of dedication there is no distinction between country roads and city streets.

VIII. Neither of the affidavits read in support of the report shew that either of these streets have ever been actually used as streets. Particular attention is called to these affidavits : " They were open and free for the passage of all persons to and from the river and First street, and traveled by persons going to and from the river," but they nowhere state that any persons ever did go to and from the river over these streets, and yet these affidavits might be true and consistent with the affidavits filed on behalf of the relators, which shew that access was only had to the river through a private gate upon the premises of the relators. This would establish nothing more than a mere license, or permission, not a dedication.

IX. Conceding, then, there was manifested an intention, at some future time, to dedicate these lands to public use, it was competent to revoke that intention. (*Holdane* v. *Trustees of the Village of Cold Spring,* 23 *Barb.* 103.)

This intention was revoked by the fencing in of the land lying in the streets more than twenty years ago. Within that time, therefore, it is conceded that the land in these streets has never been used by the public. Whatever license or permission have been acquired by them has long since been forfeited by non-use.

X. If it were true that these lands had ever been used as public highways, there would have been no necessity for these proceedings, since under the city charter the continuous use of any street by the public for five years gives the corporation full power and authority over the same, in the same manner

as if it had been opened by law. (*Laws of* 1862, *chap.* 63, *sec.* 41.)

XI. The city of Brooklyn is estopped from claiming that these streets were ever traveled or opened or existed in any way as streets, except on the village and city map. The petition for the appointment of commissioners recites that the application is made under an act of April 12, 1862, (*chap.* 184, *fol.* 23.) This act gives the common council power " to open, continue and complete to the East river, and to the permanent bulk-head line, any and all the streets in the late city of Williamsburgh, the westerly termination of which are now at First street in said late city, or at the East river ;" * * * and makes all laws now in force in relation to opening streets, &c. applicable, " except such part thereof as requires a petition or consent of the owners of property affected thereby ;" and the petition also recites that the application is made to open said streets from First Street to the permanent bulk-head line in the East river.

XII. At the time of the doing of the acts which are claimed to amount to a dedication, the high water line was within about one hundred feet of the westerly line of First street.

The balance of the street to the permanent bulk-head line, a distance of several hundred feet, is all made land, filled in under an act of the legislature, passed 23d April, 1855. (*See Laws, p.* 123.) As to this land, it cannot be pretended that there was an intention of a present or future dedication, and the relators are entitled to compensation for so much as lies beyond original high water mark.

XIII. The several acts under which these proceedings are taken are void—they violate the provision of the constitution, " that private property shall not be taken for public use without just compensation." (*Sec.* 6, *art.* 1 *Const. Title* 4 *of the City Charter, as amended by ch.* 63, *sec.* 14 *to* 17, *of Laws of* 1862.) Under this act, one set of commissioners estimate the value of the land taken ; another board subsequently assess the expense of the improvement upon the land lying

within the district of assessment ; but before the report of
the commissioners of estimate can go before the board of as-
sessors, the report must be confirmed by the Supreme Court.
The person to whom the award is made should know before
he is called upon either to oppose the report or to acquiesce
in it, how much he is to be assessed for the improvement. In
order to complete the improvement, the means of raising the
cost of the improvement, by a proper distribution, as well as
the estimating of the cost, should be both provided for.
Under the present law, these two acts are performed by two
distinct independent bodies, and at different times. When,
therefore, the report of the commissioners of estimate comes
up for confirmation, the owner cannot tell whether he will be
justly compensated or not for his land — the compensation
will be just or unjust precisely in the proportion that he is
fairly or unfairly assessed for the improvement. The charter
makes no provision for compensation of any kind for the land
taken. Until that is done, no valid proceeding can be had
which shall conclude the same. His right to be paid for his
land cannot be made contingent upon the action of any other
board ; nor can his award be deducted for any assessment,
nor be left to depend upon the payment into the city treasury
of any balance of assessments, since that is the only fund out
of which any awards, or balance of awards, can be paid. Sup-
pose, however, that the report of the commissioners of estimate
and the board of assessors should be confirmed, at which time
the right of all parties become ultimately fixed, and it turns
out, either because the lands assessed for the improvement
are not worth the assessment, or because the owner will not or
cannot pay the same, where is the owner to get his compensa-
tion for the land taken ? It is no answer to this, that the
owner may hold on to his land in the street until he is paid
his award, because this might result in depriving ninety-nine
persons, who had paid their assessments, of the benefit of the
contemplated improvement, because the hundredth man would
not, or could not, pay his.

The law which attempts to work such an injustice is unconstitutional and void.

XIV. The effect of the report of the commissioners is to compel the relators, not simply to furnish their half of the streets in question, but also to contribute to the payment of the cost of the other half of said streets, contrary to the well established rule that each side of the street should furnish its half.

The report should be sent back for correction, and the order confirming the report be reversed, with costs.

*Sidney V. Lowell,* (assistant corporation counsel,) for the respondent. I. The lands taken for these improvements south of the centre line of North 11th street, the northern boundary of the " Butler, Handy and Sinclair" tract, were dedicated and reserved for use as streets to the said parties and their grantees, a large number of persons.

By the division of the property owned by Sinclair, Handy and Butler's heirs, according to the plan shown on the partition map, the land forming the various streets laid down on the map was given up for use as streets and reserved as such to all of the parties among whom the lots were divided and their grantees. The Butler heirs had lots set off to them upon each of the streets laid down upon the map, and Handy and Sinclair each had lots set off to them upon nearly all the different streets. The value of each lot was made up not only from its situation upon the street upon which it fronted, but from the fact that there was a neighborhood of contiguous city lots and streets, a convenience of access to other houses and lots *and to the river.*

II. The streets in question having been dedicated to the use of the purchasers of the lots shown on the map, and a large number of lots having been sold by reference to this and another map showing the streets in question, all the grantees under these deeds acquired a right to use the said streets as they exist or may be formally laid out, and upon the opening

of the streets under legal proceedings the parties who own the naked fee of the streets, subject to the easement, are entitled to nominal damages only. This has been settled by a line of decisions forty years old. (*Livingston* v. *Mayor, &c. N. Y.,* 8 *Wend.* 85. *Wyman* v. *Mayor, &c. N. Y.,* 11 *id.* 487. *Matter of Furman street,* 17 *id.* 661. *Matter of 32d street,* 19 *id.* 128. *Matter of 17th street,* 1 *id.* 262. *Matter of Lewis street,* 2 *id.* 472. *Matter of 29th street,* 1 *Hill,* 189. *Matter of 39th street, Id.* 191. *Matter of 4th avenue,* 11 *Abbott,* 194. *Watertown* v. *Cowen,* 4 *Paige,* 510. *Clements* v. *Village of West Troy,* 10 *How. Pr.* 199. *S. C.* 16 *Barb.* 251. *People* v. *Lambier,* 5 *Denio,* 9. *Bissell* v. *N. Y. Central R. R.,* 26 *Barb.* 630. *S. C.,* 23 *N. Y. Rep.* 61. *City of Oswego* v. *Oswego Canal Co.,* 2 *Selden,* 257. *Matter of 23d street, Wood* v. *City of Williamsburgh, MS. Opin. Gen. Term, 2d district.*)

III. It is not necessary, to fasten the right to use the streets, that they should have been actually practically opened and traveled, but such right continues and ensues whenever such streets are opened. This is expressly held in *Livingston* v. *The Mayor, &c.; Wyman* v. *The Mayor, &c.; Matter of 39th street ; Matter of Furman street, above cited.*

IV. The case of *Holdane* v. *The Trustees of Cold Spring,* (21 *N. Y. Rep.* 474,) cited by appellants, does not affect the case in question unfavorably. The judge delivering the opinion says : " If, however, private rights have been acquired with reference to such dedication and such an interest secured with the assent and concurrence of the owner as would render it fraudulent in him to resume his rights, the dedication becomes irrevocable." (21 *N. Y. Rep.* 479.) In the case of the *City of Oswego* v. *Canal Co.,* (2 *Selden,* 257–267,) cited above, Judge Edmonds points out the distinction in like language ; as also in *Bissell* v. *N. Y. Central R. R.* (26 *Barb.* 630 *and* 23 *N. Y. Rep.* 61.) The case of *Badeau* v. *Mead,* (14 *Barb.* 328,) decided by Judges Strong and Barculo, Judge Brown dissenting, is also not applicable to this case.

That decision relates to roads over rural property, and Judge Strong quotes the language of Chancellor Walworth, that "the principles of construction applicable to grants of property in the country do not apply to conveyances of city lots." The case relates to a small plot of ground laid out into plots in the country on the New York and New Haven railroad and "the road to White Plains;" the premises were not even in a country village, but only "adjacent thereto." Considered otherwise than as a decision relating to rural servitudes it would be contrary to the decisions of the highest courts and the best jurists of the state.

V. In regard to what interest the parties in interest have received by their deeds in terms. The conveyance to Poillon, Sale and others (grantor, Devyr,) is of lots fronting on streets shown on a map, but by particular description by metes and bounds, which by bounding the lots on the *side* of the streets exclude the same. (*Wetmore* v. *Law,* 34 *Barb.* 515, &c.) The clause conveying all the right, title, &c. of the grantors to the "*streets*" opposite is a grant of the land as and for "streets," and which conveys the naked fee only subject to the easement over the ground for street purposes.

VI. *As to the constitutional point urged.* It is said that "the person to whom the award is made should know before he is called upon whether to oppose the report or acquiesce in it, how much he is to be assessed for the improvement." This might well be urged before a legislative committee as a matter of expediency in legislation, but not here. No doubt the person whose property is to be taken would like to anticipate the report of the assessors as to how much his adjoining property is to be assessed, but to oblige him to wait for a week or two, until that report is made, is not a violation of the constitution. When the report of the board of assessors is made, he can contest it if it is not fair, as well as the report of the commissioners. Each report, in this regard, stands on its own bottom. The commissioners can only award for the fair value of the land. The assessors can only

assess the fair proportion of benefit. When both reports are confirmed and the assessment thereby laid, by which the cost of the improvement is to be collected, "a method having been provided by law for payment for the property taken," the city has the right to take the property for public use. If there is any balance of award over assessment coming to the owner of property taken, he must be forthwith paid the same, and if not paid within a reasonable time by reason of negligence in enforcing the collection of the assessment or otherwise, the city is liable to an action for the award, and is chargeable with interest. The system of payment by assessment has been contested in vain through all the courts in the state. It is the usual way of paying for property taken for public improvements, provided by the legislature and upheld by the courts.

After hearing the arguments of counsel, the court, at general term, adopted the above opinion of Judge LOTT, delivered at special term, and quashed the certiorari.

[KINGS GENERAL TERM, December 10, 1866. *Lott, J. F. Barnard* and *Gilbert,* Justices.]