# SUPREME COURT.

## MATTER OF OPENING SIXTY-SEVENTH STREET.

*Street openings in New York City — Dedication — Boundaries — Power of Executors to dedicate — Excessive awards.*

Where an owner of land through which a public street is laid out, in conveying portions of such street makes the street a boundary, the grantees are entitled to the use and enjoyment of the street for that purpose as an easement or servitude to the property granted.

Where land is granted bounded upon a street or highway. there is an implied covenant that there is such a way, and that so far as the grantor is concerned it shall be continued, and that the grantee, his heirs and assigns shall have the benefit of it.

By bounding land conveyed by the side of a street or highway, the land in the highway is excluded by force of the description so used, and does not pass to the grantee.

Executors acting under a power or trust to sell real estate conferred by will, may lawfully dedicate to public use that portion of the land of the testator within the lines of a proposed street as incidental to the sale of the land in lots or otherwise on each side of the street.

The power to divide and lay out in lots and streets the land of the testa-
tor, is a necessary incident to a power given to executors to sell and
dispose of it to the best advantage.

An owner of a tract of land in the city of New York, by conveying a
portion thereof bounded upon a street, dedicates the street not only to
the next intersecting avenue, but as far as the same extends through or
is laid out over his land.

Upon the coming in of the report of the commissioners of estimate and
assessment, the court will examine the testimony submitted to them as
to the value of property to be taken for the street, and if it appears
that the amounts awarded are greatly in excess of the real value of the
property, the report will not be confirmed.

*New York Special Term, January*, 1881.

MOTION to confirm the report of the commissioners of esti-
mate and assessment.

*William C. Whitney*, counsel to corporation, for the
mayor, &c.

*Henry H. Anderson*, for W. C. Schermerhorn and another,
for the motion.

*Frank E. Blackwell*, for the devisees of Smith Bloomfield,
deceased, for motion.

*James A. Deering*, for New York Loan and Improvement
Company, opposed.

*John C. Shaw*, for I. Sternberger, opposed.

*James M. Fitzsimmons*, for Ann Cassidy, opposed.

DANIELS, *J.*— The street, which it was the purpose of these
proceedings to open, was laid out and delineated upon maps
filed by the commissioners appointed for that purpose under
chapter 115, Laws 1807.

The legislature, at that time, anticipating the future exten-
sion and growth of the city, made provision by this act for

VOL. LX    34

laying out streets over a portion of its territory for the purpose of definitely fixing their location, and enabling the owners of the property to occupy, enjoy and deal with it in view of the future opening of such streets. The maps of the commissioners were, one of them, required to be filed in the office of the clerk of the city and county of New York, and the other to be at the disposal and use of the mayor and aldermen of the city. By the act making these provisions, the work assigned to the commissioners was to be completed within the period of four years (*Laws* 1807, 126, *sec.* 3), and sufficient appears in the case to warrant the conclusion that they complete what was required by this law in the year 1811.

The maps filed by them contain a discription of the localities of the streets, avenues and public places required to be designated by them in the exercise of the authority created by its provisions, and when the maps were filed and published, as that was required by means of that act, a record was substantially made indicating the locality of these streets, avenues and places. After that had been done, and by means of chapter 86 of the Revised Laws of 1813, it was further provided that measures might be taken on the part of the city for opening and improving such streets as the public interests and convenience should require that to be done. But in the meantime no person was allowed to erect any building upon the lands designated as streets, avenues or public places upon the maps of the commissioners, without the assent of mayor, &c., of the city, and in case they did so, they were simply to be at liberty to remove them at their own expense when it should become necessary to open the streets, avenues, &c., and that was not to be attended with expense to the public authorities; but the commissioners to be appointed to estimate the damages and assess the expense of opening the street, &c., were prohibited from allowing any compensation whatever for any building which, at any time subsequent to the filing of the commissioners' maps, might be built or erected, or placed upon any such street, avenue or public place (*Revised Laws*

1813, *vol.* 2, 414). Under these acts it became the policy of the city to indicate the future existence of the streets and avenues, and the localites over which they should be constructed and maintained, and when, by force of the legal provisions established by the legislature, they should afterwards be opened the damages were to be equalized by the benefits so far as the latter might prove adequate for that purpose. The street in controversy was one of those which was laid out and designated on the maps of the commissioners, and was afterwards within the protection of the provisions of both these statutes, and it was for the purpose of opening this street and rendering it useful to the public that the proceedings were taken which the motion is now made to confirm. The commissioners who were appointed to estimate the damages which might be sustained in opening and improving the street, allowed to the persons who are described in the proceedings as the devisees or heirs of Smith Bloomfield substanial awards for the property forming that portion of the street extending for the distance of 100 feet from the easterly line of Third avenue. The amount allowed was the sum of $24,000, and they also allowed nominal damages for the land taken for the residue of the street easterly to a point $157\frac{1}{2}$ feet westerly from Second avenue. The land for which the awards were so made was sixty feet in width, which was the width required to be included within its limits by the law of 1807 already referred to. The large award made for the land bounded westerly by Third avenue and extending easterly upon Sixty-seventh street to the extent of 100 feet has been opposed as unfounded both by the city and by the persons upon whose property the amount has been assessed. This award has been resisted as illegal, for the reason that the executors of Smith Bloomfield, who was the owner of the adjacent property and of the fee of that forming the bed of the street, had, by their own conveyance, made a dedication of this portion of the street, as well as that laying easterly from it, for the use of the public. Smith Bloomfield died on

the 11th day of May, 1865, leaving a will which was admitted
to probate, and under its provisions letters testamentary were
issued to William and Ellis S. Bloomfield as his executors. At
the time of his decease he owned the property situated upon
the northerly and southerly sides of what had been laid out
upon the commissioners' map as Sixty-seventh street and
extending to the distance of 456 feet from the easterly line of
Third avenue. He was also vested with the fee of the land
designed to be appropriated for the purpose of that street.
After their appointment these executors conveyed the land
so owned by the testator upon both sides of the street,
and in the deeds made by them they located the south-
erly and northerly lines upon Sixty-seventh street. The
lands conveyed in each instance were described as laying
upon one or the other side of this street, and they were
bounded by its northerly or southerly side in equal and
explicit terms, as they were appropriate for the purpose of
indicating the line of the property intended to be conveyed.
They did not bound the property along Sixty-seventh street,
but along the northerly or southerly side of the street, and for
that reason the grantees under the deeds acquired no title to
the property situated within the northerly and southerly lines
of the street (*Jackson* agt. *Hathaway*, 15 *John.*, 147; *Mott*
agt. *Mott*, 68 *N. Y.*, 246). But while under the descriptions
contained in these deeds the land situated within the limits
of the designated street was not conveyed to the grantees
whose deeds bounded them upon the street, it was still suffi-
cient to entitle the purchasers to the use and enjoyment of
the street itself. It was not stated in either of the deeds
what was understood to be the width of Sixty-seventh street,
but from other references and distances contained in the
descriptions, it is reasonably evident that it was understood to
be a street of sixty feet in width; and while the deeds do not
define the extent of the street, it is reasonably plain that their
references to it were made as it had been laid out and deline-
ated on the maps filed by the commissioners; substantially,

therefore, the land was conveyed by the executors upon each side of the street as a sixty-foot street, and that constituted its side one of the boundaries of the property conveyed. This description of the land as bounded by the street was sufficient to entitle the grantees to its perpetual use and enjoyment for that purpose, as an easement or servitude to the property which had been conveyed to them respectively. They had the right from that circumstance to insist that the land included in the limits of the street should be appropriated to and used for the purposes of a street for the benefit and convenient enjoyment of their property bounded upon it. The rule upon this subject has become reasonably well defined and so completely established as hardly to require the citation of authorities for the purpose of sustaining it. It has been stated to be that when land is granted bounded on a street or highway, that there is an implied covenant that there is such a way, and so far as the grantor is concerned it shall be continued, and that the grantee, his heirs and assigns shall have the benefit of it (*White's Bank* agt. *Nichols*, 64 *N. Y.*, 65, 73; *Matter of Brooklyn*, 73 *N. Y.*, 179.) Such an intention is plainly manifested by the description made, and it is just that it should be rendered effectual. This principle has been applied directly to the cases of conveyances of land bounded upon streets laid out in the city of New York by the commissioners deriving their authority from the act of 1807. And where that has been done the conveyance has been attended with the effect of appropriating or dedicating the lands within the lines of the designated street, to the enjoyment and use of the person acquiring title under the deed, as one of the streets of the city (*Matter of Thirty-second Street*, 19 *Wend.*, 127; *Matter of Thirty-ninth Street*, 1 *Hill*, 191). The propriety of this principle has not been questioned by the learned counsel who has so ably urged the confirmation of the report made by the commissioners. But it is objected to as inapplicable to the present case, for the reason that the deeds conveying the testator's

property, as it was situated upon what was called Sixty-seventh street, were executed by the grantors as executors. It is no doubt true that the legal appropriation or dedication of real estate for the purposes of streets or public places is required to be made by the sanction or authority of the owner of the fee. That principle is so well settled as to require no reference to the authorities for the purpose of sustaining it. But the executors in this case, under the will of the owner of the fee, were, in terms, empowered to dispose of it. It is not necessary to determine the point, discussed to some extent, whether the provisions contained in the will on this subject was a trust or a mere power, for in either case the effect of the language made use of would be the same. By that language the testator authorized such of his executors as should take upon themselves the execution of his will, or the survivor or survivors of them, for the purpose of dividing his estate, or otherwise to sell all or any part of his real estate, not specifically devised, either at public or private sale for cash, or upon credit, and upon such sale to execute the deeds necessary or proper to carry the sales into effect, and he then added that the sales so to be made should be an effectual bar against the claim of any person or persons claiming under him. The portion of the testator's property through which the street in controversy was laid out, was not specifically devised by him, and for that reason it was comprehended within this power conferred by him upon his executors. The authority given to them to sell it was of a broad and unlimited character, allowing that to be done as their judgment might indicate it to be proper and advantageous to his estate. The property was valuable for the occupancy and use of persons desiring to improve it. It was situated in that part of the city where it was available to be built upon, and it could be sold for that purpose only by providing some means of access to it. If the lots had been conveyed without the advantages of a street in front of them, they would evidently have been of much less value than if that means of approach and enjoyment

were provided ; a proper sale of property of this description necessarily includes the power to provide some means of ingress and egress to and from it, and that in such a locality can be used as well by the owners as by all other persons passing in the vicinity.

In no other way can the proper advantage of this nature of property be acquired or enjoyed by the purchaser. The object of the testator in creating this power of sale, was to secure as large a sum as might be obtained from his property and a division of it among his devisees, and whatever was necessary properly to promote that end must be included within the power created by this provision of the will. The power properly to divide and lay it out in lots and streets, was a necessary incident of the power of disposition given by the testator to his executors. They might, it is true, have sold the property as a mass, but it is evident if they had done so, that the purchaser or purchasers would have been obliged to have opened the street in order to give them the full benefit and advantage of their purchases, and for that reason so much less would have been derived from the sale of the property as the land was considered worth, which would be required to be included within the limits of the street. The executors, in the exercise of their judgment, considered that not to be a favorable disposition of the property which they sold. They chose, on the contrary, to divide it up into lots bounded upon this street themselves, with the propable expectation that in pursuing that course more money would be derived from it than by a sale of it in any other manner. This was a subject which the testator had left to be determined by the judgment of his acting executors, and in what they did they seemed to have been warranted by the authority created by the will. In making the purchase the grantees must have paid part of the purchase-price for the privilege created by the deed of having the property purchased by them bounded upon this street. The deeds, as they are required to be construed, not only conveyed the land in terms described, but in addition to

that the right to use and enjoy the intervening property for the purposes of a public street. The executors had the entire control of the fee to all of this property, and substantially in the exercise of their authority were owners of it, and empowered for that reason to sell it to the purchasers in such terms as to give them the incidental right to use and enjoy that which was referred to as the street. Ordinarily an executor would have no authority to dedicate the estate intrusted to him to public uses, but as incidental to the exercise of such an authority as this, they could lawfully do what by these deeds was clearly intended to be accomplished. So much was held to be proper, and within the power of executors in selling the property of the testator in the case of *Earle* agt. *Mayor of New Brunswick* (38 *N. J. Law Repts.*, 47). As to the lands laying easterly of that for which these large awards were made, and forming a portion of the testator's estate, the commissioners appeared to have adopted this view for they allowed only nominal amounts for its appropriation to the uses of the street. How that could have been done consistently with the large awards made for the sixty feet fronting upon Third avenue, it is not easy to perceive. For if the owners of the lots easterly of the 100 feet of the street fronting upon the avenue were entitled to use the land within the bounds of Sixty-seventh street, they had the right to pass over that laying to the west of them and extending to Third avenue. And having that right the result would be to reduce the value of the fee, not only to that forming the portion of the street lying easterly of it, but also to all that required to form their passage out to Third avenue. If they were right in withholding substantial awards from the easterly portion of the land situated in the street, they were wrong in making them for that lying to the west. As the deeds have been construed they were not justified in making these awards for the portion of the street adjacent to Third avenue, but they should have disposed of that as they did the other portions of this property, and limited the devisees of Smith Bloomfield

to a mere nominal award. This is the principle which had been applied to cases of this nature when the public authorities have entered upon the land to open and construct the street over it which has been designated or adopted by the owners' conveyancers; and no good reason exists for a failure to observe it in this instance.

To the extent of the large awards made for the value of this property, the report of the commissioners was unauthorized and it must be disaffirmed.

The land to the east of that owned by Smith Bloomfield was known as the Schermerhorn estate; that extended easterly across the Second avenue. The First avenue and Avenue A to the East river, and so far as that was included within the limits of the street, awards were made by the commissioners for what they appear to have considered as its value as city property. Most of this land and that adjoining it was made the subject of an action in partition, which was determined in the year 1818. That was after the commissioners had located these streets and filed their maps, as it was required to be done by the act of 1807. While the land which was made the subject of the partition was not in its divisions bounded by these streets, reference was still made to them as streets which had been laid out and designated by the commissioners under the act of 1807, and in the course of the description which was given of the property in this vicinity, this particular street was mentioned as one of those existing in the city. It was not itself made a boundary, but one of the boundaries of a part of the property was located by a reference to its distance from Sixty-seventh street, and the property described was stated to include streets and avenues as well as the part that was not affected by their existence.

This reference to the streets, it is true, was not sufficient to create an appropriation of any portion of the estate to their construction, but without compensation; but it was a clear and distinct recognition of their existence and of the relation the other portions of the property described, sustained to them.

This property appears to have been owned by Peter Scher-
merhorn at the time of his decease, and he left a will by
which he empowered and authorized his executors, in their
discretion, to sell and convey the portions of his real estate in
the city as were known, as this was on the Louvre farm and
the Belmont farm or any part or parts of either of them.
This power, though more briefly expressed than that which
was contained in the will of Smith Bloomfield, vested the
executors with substantially the same authority over this prop-
erty, and in the exercise of that authority they conveyed by
a deed dated on the 1st day of May, 1868, a small portion of
this estate to the Third Avenue Railroad Company.

In describing the property conveyed, they began the descrip-
tion on the southerly side of Sixty-seventh street at the dis-
tance of 150 feet westerly from the south-westerly corner of
Sixty-seventh and Second avenue, and then ran the line
westerly along the south side of Sixty-seventh street eleven
feet and eight inches to the land of the heirs of Smith Bloom-
field. While the division made in the partition suit was not of
itself sufficient to constitute an appropriation of any part of
this property to the purposes of the street, that together with
this deed should manifestly be attended with such an effect.

For while the partition assumed the existence of the street,
this deed unequivocally adopted it as a fixed and definite
boundary of the property conveyed by it. The effect of that
was to entitle the grantee under the deed to insist upon the
right to use this street as a public avenue for the convenient
enjoyment of the property conveyed to it. It brought the
case as to this estate within the principle already mentioned
and to which the westerly portion of the same street has
already been subjected.

The street, as it was referred to in the partition and as it
was also mentioned in this deed as one of the boundaries of
the property conveyed, extended easterly upon the commis-
sioners' map to the East river.

It ran in a straight line through this locality, and for that

reason the grantee in the deed probably became entitled not only to the use of so much as formed one of the boundaries of the property conveyed, but also to the use of the entire street extending to its terminus at the East river.

Upon this subject it has been held that when the owner sells his lots, he sells them with all the privileges and advantages appertaining to them. One of them is that the street shall be opened without payment for the land taken.

"The purchaser of every lot gives an enhanced price in consequence not only of having a street adjacent to his own lot, of having a number of streets in the vicinity of his own lot according to the plan or map by which he purchased, and if no other map is used to designate the lots sold, the commissioners' map must control and be considered as referred to in the conveyance" (*Wymon* agt. *Mayor*, 11 *Wend.*, 487, 494; *People* agt. *Brooklyn*, 48 *Barb.*, 211; *De Witt* agt. *Ithaca*, 15 *Hun*, 568).

It was suggested in *Badeau* agt. *Mead* (14 *Barb.*, 328), that some of the authorities had extended this principle beyond the point at which it could properly be maintained, but it was not intimated that it should be as far restricted as to prevent the grantee, in the conveyance bounded upon the street, from acquiring the right to have the entire street opened for his use, as it is referred to in the deed. And for these reasons the commissioners do not seem to have been justified in making any of the substantial awards which they did make for that portion of the Schermerhorn property as was included within the bounds of this street. But however this may be, they certainly were not justified in making the awards which they did for the property lying between the easterly point mentioned in the deed to the railway company and the westerly bounds of Second avenue. The effect of the executor's deed was surely to entitle the grantee to insist upon the opening of that part of the street which was included between the easterly boundary of the land conveyed to the westerly line of Second avenue, upon the payment of mere nominal awards,

This was not done, but the commissioners for the land included in that part of the street allowed the sum of $12,084.

These were clearly unfounded, even if substantial awards might be made for the land included in that part of Sixty-seventh street lying easterly of Second avenue. Another partition of this property was made, in which it was declared that the reference to the streets should not be regarded as a dedication; but that can have no effect upon the disposition which should be made of this part of the controversy, inasmuch as the original decree in partition, together with the deed afterwards made by the executors created such a dedication. It is possible that facts may be proved which should require a different disposition of the portion of the controversy relating to the street east of Second avenue; but if that can be done they have not now been made to appear as they have been disclosed. There seems to have been no legal foundation for the large awards made for that portion of the street passing over the Schermerhorn estate. It had not previously been opened; but the right to open it seems to have been created substantially by the deed which the executors gave. If, however, these awards were not wholly unjustifiable from the proofs which have been produced upon the hearing of this application as to the value of property situated within the lines of streets laid out by the commissioners, the amounts awarded are greatly in excess of the real value of the property taken.

Allowing all proper effect for the observation and judgment of the commissioners themselves, the sums allowed by them appear largely to exceed that which would be just under the circumstances; and for that reason the report of the commissioners to this extent should not be sustained.

It appears by the conveyances which have been made since the executors' deeds of the property fronting upon Sixty-seventh street, between Second and Third avenues, that it has been bounded substantially in the same manner as it was in their deeds by the sides of that street. There has been no

departure in this respect, but upon all occasions the street has been, in the disposition which has been made of the property, as one of the streets of the city.

The motion to confirm the report must be denied for the reason that the public authorities surely had the right to appropriate this portion of the property to the opening of the streets upon making a merely nominal compensation for the title taken to its owners, who held it subject to the right of the adjacent proprietors to have it used in that way, and because the awards for the lands east of Second avenue were greatly in excess of their market value. Whether the further hearing, which will be required, shall be had by the same commissioners or others will be determined when the order shall be settled, which will be upon notice to the respective counsel appearing.