(73 Misc. Rep. 96.)

## WHITE et al. v. MOORE.

(Supreme Court, Special Term, Nassau County.  July, 1911.)

1. DEDICATION (§ 19*)—NATURE AND REQUISITES—DESIGNATION IN MAP—SALE OF LOTS.

Where a purchaser of land filed in the office of the county clerk a map showing a portion of the premises as a park, and induced the holder of an outstanding contract for the purchase of a portion embraced in the designation of the park to surrender his contract and accept other lots on the representation that he intended to create a park, and then laid out streets about the park, planted a row of trees along the outer edge of the sidewalk, and another row some distance inside the sidewalk surrounding the park, and built an ornamental post fence with an opening in each corner where he placed a turnstile, and sold lots with reference to the map and made deeds referring to it, this constituted a dedication of the park as to grantees in the deeds or their successors in title.

[Ed. Note.—For other cases, see Dedication, Cent. Dig. §§ 35–47; Dec. Dig. § 19.*]

2. DEDICATION (§ 37*)—NATURE AND REQUISITES—ACCEPTANCE—USER BY PUBLIC.

Where the owner of land filed a map designating a portion of the tract as a park and sold lots with reference thereto, and the streets laid out by the owner were accepted by the village and used as such by the public, and the park was used for baseball games by the village children and later by uniformed baseball clubs, grand stands being erected, and the place being made generally fit for sports, there was an acceptance of the dedication by the village, notwithstanding the pasturing of a cow in the park by the owner, the interference with the removal of hay, and the sale by the owner of turf and wood from the park when the baseball diamond was laid out.

[Ed. Note.—For other cases, see Dedication, Cent. Dig. §§ 73, 74; Dec. Dig. § 37.*]

Action by Georgianna B. White and others against Florence A. Moore for an injunction.  Judgment for plaintiffs.

See, also, 139 App. Div. 934, 124 N. Y. Supp. 1133.

Towne & Spellman (Benjamin F. Spellman, of counsel), for plaintiffs.

Harry W. Moore (William Van Zandt, of counsel), for defendant.

JAYCOX, J.  The action is brought to restrain the defendant from interfering with or molesting the plaintiffs in the use of the premises described in the complaint as a public park.  The defendant claims to be the owner in fee of the premises, free from any rights or easements in the plaintiffs.  The individual plaintiffs claim that as to them the property was dedicated for park purposes by the predecessor in title to the defendant, who laid out the park and surrounding premises on a map.  The portion which is now claimed as a park was thereon designated as a park, and the surrounding premises were laid out in lots and streets.  The streets are still open, have been accepted by the village as public streets, and are used as such by the public.  All the lots laid out on the map, or maps (as the subsequent owner filed another which was the same as the former one), were sold by reference to such maps and conveyances given which referred to said maps.

These plaintiffs were the grantees in those deeds, or the successors in title of the grantees in those deeds. The plaintiff village claims the dedication to the general public by the predecessor in title of the defendant and an acceptance of such dedication by the village.

[1] The premises were originally laid out in lots upon a map which did not show a park. Upon the foreclosure of a mortgage upon the property one Henry Dubois purchased the premises. He caused a map to be made which shows the park in question. This map was filed in the office of the clerk of the county of Queens, in which county said property was then located. Subsequently the county of Queens was divided, and the property is now in the county of Nassau. The proof shows that at the time when Henry Dubois made the map in question there was at least one person holding a contract to purchase some portion of the premises embraced in the designation of a park upon said map; that Henry Dubois procured him to surrender his contract and accept lots in another portion of the premises, upon the representation that he intended to create a park where those premises were situated. He then laid out streets surrounding this park which, as I have said before, have been accepted and used. He then placed a row of trees along the outer edge of the sidewalk. Then he placed another row of trees 20 feet or more inside of that row and some distance inside of the sidewalk surrounding the park. He then built an ornamental fence, consisting of turned chestnut or locust posts, connected the same with ribbon wire, leaving an opening in each corner, in which he placed a turnstile. With the premises in this condition and with the map on file as before stated, he sold lots by reference to that map and made deeds of those lots, referring to such map.

If this question had not been passed upon, I would feel that a complete and irrevocable dedication of these premises for park purposes had been made by the then owner, Henry Dubois. But the question, it seems to me, is not a new one. It has already been passed upon by the Appellate Division when a demurrer was interposed to the complaint and the law of the case laid down by that decision. That case apparently holds that if the facts alleged are true a dedication has been made. White v. Moore, 139 App. Div. 269, 123 N. Y. Supp. 1012.

The facts above recited by me are the facts set forth in the complaint. Numerous other authorities to the same effect may be cited in support of this proposition. 9 Am. & Eng. Ency. of Law, 57; 13 Cyc. 455–458; Trustees of Village of Watertown v. Cowen, 4 Paige, 510, 27 Am. Dec. 80; Klug v. Jeffers, 88 App. Div. 246, 85 N. Y. Supp. 423; Burnet v. Bagg, 67 Barb. 154; Foster v. City of Buffalo, 64 How. Prac. 127; Kerrigan v. Backus, 69 App. Div. 329, 74 N. Y. Supp. 906; Thousand Island Park Ass'n v. Tucker, 173 N. Y. 203, 65 N. E. 975, 60 L. R. A. 786; Porter v. International Bridge Co., 200 N. Y. 234, 93 N. E. 716. In the last case cited the dedication was made by a map, upon which the premises were shown as a "publick square," and it was held that the effect of this dedication of the land designated as a "publick square" on the map of the proposed extension was to create an easement in favor of the public coextensive

with the purposes to which public squares in such localities are usually applied. The court cites with approval Trustees of M. E. Church of Hoboken v. Mayor, 33 N. J. Law, 13, 97 Am. Dec. 696, and says there the dedication was effected by the making of a map of the well-known Stevens tract in Hoboken on which the property in controversy was designated simply by the word "square" and the owner subsequently executed conveyances referring to this map. The court discusses the meaning of "square" as thus used, saying:

"The word 'square' on this plot of ground indicated a public use, either for purposes of a free passage or to be ornamented and improved for grounds of pleasure, amusement, recreation, or health. This is the proper and natural meaning of the term and its ordinary and usual signification. The word 'square' as a term of dedication imported a complete and unrestricted abandonment to the public uses above indicated."

In Johnson v. Shelter Island Grove & Camp Meeting Ass'n, 122 N. Y. 330, 334, 25 N. E. 484, 485, the court, speaking of a map of the lands of the defendant in that case, with reference to which the conveyances had been made, says:

"Now, as to so much of the lands designated upon said map as appropriated to the use of the Shelter Island Community as public grounds, whether designated as streets, avenues, parks, or places, each purchaser of a lot acquired therein distinct and independent rights by implied covenant as appurtenant to the premises granted; an easement, the enjoyment of which the defendant could not thereafter abridge." Lennig v. Ocean City Ass'n, 41 N. J. Eq. 606, 7 Atl. 491, 56 Am. Rep. 16.

In an action brought by the predecessor in title of the defendant against one of the lot owners upon said map Mr. Justice Dickey found and decided that said "Frederick Wellenbrock acquired an easement in said park by implied covenant as appurtenant to the premises granted. The said park could not be used for any other purposes than park purposes."

The attorney for the defendant, with commendable industry, has found many cases which he claims hold to the contrary of the cases above cited; but most of them upon examination are found to be based upon an entirely different set of facts. One upon which he places a great deal of stress is Johnson v. Shelter Island Ass'n, 47 Hun, 374. This was reversed in the decision above quoted by me (Johnson v. Shelter Island Grove & Camp Meeting Ass'n, 122 N. Y. 330, 25 N. E. 484), and so far as the law is stated in 47 Hun the Court of Appeals holds absolutely to the contrary. Bissell v. New York Central R. R. Co., 26 Barb. 630, is reversed in 23 N. Y. 61.

It seems to me, therefore, that as to the individual plaintiffs a dedication has been made out beyond peradventure.

[2] As to the plaintiff village, the case is not entirely free from difficulty; but bearing in mind the fact that under the law as stated in Porter v. International Bridge Co., supra, only an easement passed by the dedication in question, the acts and claims of the predecessors in title of the defendant become more consistent with the theory of the plaintiff. The claim of the village is that the premises were dedicated by the map above mentioned and the laying out as above stated, and that its acceptance has been shown by user. The defendant, on the other hand, claims that there was no dedication to the village by means

of this laying out or mapping and that the village never accepted. The immediate predecessor in title of the defendant claims that an offer of dedication upon condition was made by her husband, the then owner of the premises, and that such offer was not accepted and was immediately withdrawn. While I have the utmost respect for the witness, I am clearly of the opinion that she is mistaken as to the facts. She testified to the exact name and office of the person with whom she claimed her husband had a conversation in relation to dedication. It is absolutely established that, at the time when she claims this offer was made, this man, Mr. Parrish, held no office whatever in the village, and that he was not elected village president until several years later. The minutes fail to show anything in relation to any such offer. One of the village trustees, who was a trustee during all the time that Mr. Parrish was president and attended every meeting at which it was claimed any such offer could have been made, testified positively that no such offer was made. What I think actually happened was that Mrs. Dubois went with her husband when he made a proposition to the village to expend a certain amount in the care of this park, if he (Dubois) would spend a corresponding amount, and that this offer was not entertained.

But, leaving that aside for a moment, I think that the laying out of the property and mapping it constituted a dedication and the use made of it by the village people from that time on indicated its acceptance. It is well known that in sparsely settled neighborhoods public parks, squares, and village greens are left open with but very little care or attention, and I am of the opinion that this square received the care and attention and was subjected to all the uses which public places in a village of that size and character would be. In this idea I find strong support in the testimony of Mr. Doncourt, a son-in-law of Mrs. Dubois, who testified as to the erection of a fence around the property by Mr. Dubois, and then says that after that no use was made of it "except people going there and sitting there and going through there and used the same as any other Sea Cliff parks are used now, I suppose." As time passed, and the village grew in size, it had more use for parks and commenced to pay more attention to this park, and from that time on it was used for baseball games by the village children, later by the uniformed baseball clubs, and grand stands were erected, the diamond was prepared and made generally fit for sports. The village celebration was held in it. Now, all this was not done without some evidence of opposition upon the part of Mrs. Dubois; but many of her acts of opposition may be ascribed to the fact that she did own the fee subject to the village's easement. She did pasture a cow in the park, and in fact, I think, sometimes several. She let other people exercise the same privilege. But what public square in any small village is not used for the same purpose, and no one would think of objecting if the person who dedicated the square used it for the purpose of pasture as long as it did not interfere with the use thus made of such square by the village. Later, it is true, she objected to the cutting of the hay and compelled its return, but to such action the village was not a party, and notwithstanding her

action at that time the village continued to cut the grass, erected electric lights in the park, and generally indicated its control and dominion over it. When the baseball diamond was laid out, Mrs. Dubois also sold the turf and the wood, which was cut from the premises; but this I must again ascribe to the fact that she was the owner in fee and would certainly have an equitable claim to this species of property, if not a legal one, notwithstanding its dedication. She also received some money from a baseball club which conducted the baseball games; but at that time she was one of the owners of lots across the street from the park, and the consent of all of these owners was also obtained. That she asked for and received payment for her consent is no more indicative of a right in her than were the consents granted by the other owners of property adjacent to the park without compensation. I am convinced that Mrs. Dubois applied to the assessor and had the property in question omitted from the town tax books upon the claim that it was a public park. The proof also is that it never was taxed by the village.

Under all these facts I think a case of dedication and acceptance has clearly been made out.

The plaintiffs are entitled to judgment as prayed for in the complaint, with costs.

Judgment for plaintiffs.