## Burnet vs. Bagg.

When a piece of land in a city is dedicated by the owners to the public for the purposes of a park or square, the city, if it accepts the dedication, becomes seised of it, not in fee, but in trust for the public, charged with the duty of preventing its appropriation to any other uses than such as the donors intended, and of securing to the public the enjoyment of the benefits which it was designed to confer.

Unless a private person, living in a corporation in which land has been dedicated for a public use, has acquired in some legal way an interest in such easement, from the person dedicating the land, he cannot maintain an action against a person or corporation interfering with or disturbing such easement; unless he sustains thereby some special and peculiar damage, which is not sustained by the great mass of the inhabitants.

It would be a breach of the trust under which a city holds land, dedicated to the public for the purposes of a park or square, to permit it to be appropriated to private use; much more to expressly permit such appropriation. A breach of trust is never presumed. *Per* Mullin, J.

The benefits afforded by a public park or square, are those of light, air, prospect and of a public promenade. Inclosing and planting trees upon land so dedicated, does not interfere with the enjoyment by an individual of any of the benefits the laying out of a park or square was intended to confer.

A triangular piece of land in the city of Syracuse having been, by the owners, dedicated to the public for the purposes of a park or square, and accepted by the city, the defendant asked, and obtained permission, from the common council, " to set shade-trees on, and to inclose, a portion of the triangle with a suitable fence." *Held*, that if, under this permission, the defendant should attempt to appropriate the triangle to his own use, an individual citizen could maintain an action against the defendant and the city, to prevent it. But that until that was done, or attempted, he could not maintain such an action.

APPEAL, by the plaintiff, from a judgment entered at a Special Term, on a trial by the court without a jury, dismissing the complaint in this action.

The triangular piece of ground which is the subject of controversy in this suit, was owned in fee by the Syracuse Company, so called. That company conveyed all the land owned by them in the city of Syracuse, including the triangle in question, to the plaintiff and Gideon Hawley, in trust for the said owners, and the plaintiff was authorized to sell and convey said lands. The plaintiff laid out said lands into lots and streets, and finding

that the triangle in question would be of more value to the owners if set apart as an open square, park or highway, did dedicate and set it apart for that purpose. The defendant owns the land on the east side of it, and the west wall of his dwelling house comes up to the east line of said triangle. Hawley street bounds said lot on the west and south, and James street on the north. The plaintiff owns a lot on the west side of Hawley street, on which his dwelling house is erected, and he owns a lot south of the triangle, lying between Hawley and Townsend streets, which come together just south of said triangle. On the last mentioned lot, the plaintiff has erected a barn, which is used by himself and his son.

This triangle, together with the land now occupied by the defendant, was for many years uninclosed and unoccupied except as a pasture for cattle running at large in the streets. While it was thus lying open as a common, and after the defendant had inclosed his lot, the triangle was travelled over by teams and people on foot, in all directions, at pleasure. The defendant, desiring to make it somewhat ornamental, applied to the common council of Syracuse for permission to inclose it with a fence, and to plant trees upon it, and it was granted; and he was proceeding to inclose and plant it with trees when this action was commenced and a temporary injunction obtained.

The plaintiff, in his complaint, alleges that this triangle was dedicated to the public for the benefit of the surrounding lands owned and sold by the Syracuse Company, and that to inclose it will deprive the plaintiff of the right to travel over it in going to and from Hawley and Townsend streets, and greatly injure the value of his lands in that vicinity, for business purposes.

The court found, as conclusions of law:

1. That the defendant was duly authorized by law to make the improvements contemplated by him, and that

the said improvements were consistent with the use for which said grounds were dedicated.

2. That if said improvements were unauthorized, yet the plaintiff could not maintain this action, for the reason that he would sustain no special damage, in case said improvements were made.

He therefore directed judgment dismissing the complaint, and directing the injunction to be dissolved with costs. (*a*)

(*a*) The following opinion was given, by the justice before whom the action was tried, at Special Term :

BACON, J. The counsel for the plaintiff in the argument submitted by them, present this case in two aspects, neither of which, I am persuaded, was within the contemplation of the plaintiff or his legal advisers, when the action was brought. It is now insisted that the title to the *locus in quo* is in the plaintiff, and has never by any act of his been divested, and that the encroachment complained of is an infringement of his rights in the subject matters which he is authorized to protect and vindicate, or that he holds the title in trust for certain other parties, whose rights have been trespassed upon, and he appears on their behalf, and substantially to rescue from perversion, what they intended for the public good, while subserving their own interests.

But a glance at the complaint shows conclusively that on neither of these theories was the action founded, or can for a moment be sustained. The complaint sets up no title whatever, either in the plaintiff in his own right, or as trustee for any other parties. On the contrary, in the very commencement it avers that " the land embraced in block thirty-two (on which the triangle in question is located) was *formerly* held by the plaintiff as trustee of the Syracuse Company," &c. It then proceeds to describe the premises, and avers that the same " has been dedicated as public grounds and easement, and highway, and as such has been accepted and used by the public, and used and occupied as such for over twenty years, &c., and as an open area for the health, pleasure and accommodation of the public." The complaint proceeds to set forth, in substance, that the plaintiff is the owner of adjoining lands on Hawley and Townsend streets, and resides near said ground, and that the same has been used more or less in connection with said streets; that the right of crossing the triangle is of great pecuniary benefit and value to the lands of plaintiff on said streets, and the obstruction of it will greatly injure the value of his lands, and that of others in that vicinity; and after describing the acts of the defendant in reference to the inclosure and improvement of the triangle, which it is alleged are for his own private use and benefit, and which are calculated to exclude the plaintiff and the public therefrom, and to greatly *injure the property* and infringe on the rights of the plaintiff and others, the plaintiff asks an injunction to restrain the defendant from further prosecuting his proposed im-

Burnet *v.* Bagg.

*Mr. Burdick*, for the appellant.  I.  A man may dedicate lands for any lawful purpose that he may choose. 1.  He may dedicate lands for a street ; 2.  He may dedicate land for a park ; 3.  He may dedicate it for a church or school house site ; 4.  For cemetery purposes ;

provements, the object of which is averred to be to injure the property of the plaintiff, and prevent the free use of the premises as public grounds and easement aforesaid.

This is the case as presented in the pleadings, and the proof given on the trial was adapted entirely to this view.  While it was directed in part to show that the public had an easement in the privilege of passing over the premises and the right to enjoy them as an open area for health and recreation, it was mainly, and in its prominent aspects confined to the injury it is alleged to inflict upon the plaintiff in his private interests, and in the pecuniary damage to his adjacent property.  There is no allegation of a trusteeship, in the matter, and no allusion to any *cestui que trust*, whose rights or interests are supposed to be either directly or remotely affected, and no interposition is asked in their behalf.  The action, if it is to be upheld, must be sustained either on behalf of the general public, or on behalf of the plaintiff personally, as a matter of private interest, and on the score of special pecuniary damage to him. I am of opinion that it cannot be sustained on either ground.

I.  To the maintenance of the action by the plaintiff on behalf of the public, there are several decisive objections.  In the first place I do not understand that a private citizen has any power to come into court representing the interests of the body public, or the general public, and ask that through him as their representative, their rights may be vindicated, and an alleged violation of them restrained.  In the second place, in respect to the object sought here, the corporate authorities of the city of Syracuse are the proper representatives of the public, and if a wrong has been done to property situated as this is, or its use and enjoyment have been prevented, they should appear, either as plaintiffs, to vindicate the public right, or if they have concurred in the alleged wrong and refuse to act, be made defendant in the suit.

But the conclusive answer to this assumed ground is, that the corporate authorities having power and jurisdiction in the premises, have by formal and regular official action, sanctioned and authorized the doing of the things from which the defendant here is sought to be restrained.  It is clear, both upon the pleadings and the proof, that the triangle in question was surrendered and dedicated to the public, and as the plaintiff alleges, more than twenty years ago.  It was never inclosed as a public park or grounds for recreation, but left open and pretty much derelict, for purposes of indiscriminate passage, and as a common for cattle and animals running at large.  No highway was ever laid out, or road thrown up or worked through it, but men and teams passed over it generally on one route, but on other occasions indiscriminately, and, as one of the witnesses states, "all over it."  It subserved in that condition no use by

Burnet *v.* Bagg.

and, 5. For an open public square. By a park or cemetery an inclosure is contemplated, and is consistent with the dedication. Not so a street, or open square, highway easement. An inclosure defeats the object of the dedication, and is not consistent with it. (22 *Wend.*, 472 ; *note, p.* 425 ; 11 *id.*, 503.)

way of ornament, or for recreation, but was merely a convenience by way of shortening the transit around the upper angle. Under the surrender and dedication, such as it is described and shown to have been, I entertain no doubt but that the authorities of Syracuse, representing the public, could, if they pleased, have laid out a highway on the premises, or caused the *locus in quo* to be improved and ornamented as a park or pleasure ground for the benefit and recreation of the citizens, for this would be entirely consistent with the object of the dedication. Moreover, by various provisions of the city charter, power is given to the common council to regulate the planting of shade trees in the streets and upon the parks and grounds of the city ; to regulate and improve the public grounds ; as commissioners of highways they have power to lay out, open, regulate, repair and improve highways, streets and public grounds in the city. What they have power to do, they have power to order or authorize to be done, and to constitute an agency for that purpose. Accordingly upon the petition of the defendant, the common council of Syracuse, in May, 1864, by resolutions duly passed, authorized the defendant to make the improvements suggested in his petition, and upon which he was engaged when arrested by the injunction order issued in this suit. These improvements were in accordance with the authority given him, and it clearly appears that they were not with the object attributed to him by the plaintiff, to wit, the annexation of the property to his own adjoining premises, and the appropriation of the same to his own individual use and benefit, and to the exclusion of the public and the plaintiff therefrom ; but that he proposed, and was proceeding to inclose, ornament and improve the same as a park, for the use and benefit of the public, and under the sanction of the public authorities — a power and privilege not granted absolutely and for all time, but subject still to the control of the authorities, and to be used and enjoyed only during the pleasure of the city. It seems to me, therefore, there can be no doubt that there was ample power imparted to the defendant to make the improvement in the mode adopted by him. If some consequential damage should result to the plaintiff, he cannot, by an action in his own name, restrain the doing of that which is authorized by competent municipal authority. (*Chapman* v. *Albany and Sch. R. R. Co.,* 10 *Barb.,* 369. *Ratcliffe's Ex'r* v. *Mayor &c. of Brooklyn,* 4 *N. Y.,* 195.) These authorities are, in my judgment, decisive against the maintenance of this action, and shield the defendant from liability in this suit.

II. There is another difficulty in the way of the plaintiff, which seems to me insuperable, even upon the concession that the act of the defendant was unauthorized by any competent power, but was an unjustifiable invasion of

II. When a dedication is made, the purpose cannot be changed. For instance, if lands are dedicated for a park, the municipal authorities of a city or village have no power to change it to a school house or church, or other public building purposes, or a street, and espe-

the rights of the public in the premises. I have already said that this suit can only be maintained, if at all by the plaintiff, to redress a personal wrong, and recover the damages, if any, he has sustained, and this is undoubtedly the theory upon which the suit was instituted. This being so, it is well settled upon numerous authorities, that no action at law or in equity can be maintained by a private person, except upon clear proof of special injury to him, irrespective of, and distinct from that which he sustains in common with the community, or the public specially affected by the alleged wrong. Thus in *Lansing* v. *Smith* (2 *Cow.*, 151,) the court say that "for a common nuisance an action cannot be sustained, except by a person who has suffered some *special damage*. The law gives no private remedy except for a private wrong." The same principle is applied by Ch. J. Shaw in *Smith* v. *City of Boston* (7 *Cush.*, 254,) to the case of a plaintiff who complained of injury to his property by the discontinuance of a street. The injury, he says, was one experienced by him in common with the rest of the community, and therefore not remediable by a suit in his name. To authorize any interposition in his behalf, he must suffer a special and peculiar damage, not common to the public. And this is precisely the ground on which the injunction was granted by Chancellor Kent in *Corning* v. *Lowerre* (6 *John. Ch.*, 439–40,) distinguishing the case, as he says, from that of the *Attorney-General* v. *Utica Ins. Co.*, "inasmuch as there was a special grievance to the plaintiffs, affecting the enjoyment of their property, and the value of it. The obstruction was not merely a common or public nuisance, but worked a *special injury* to the plaintiffs." (*See also Parsons* v. *Travis*, 1 *Duer*, 449; *Dougherty* v. *Bunting*, 1 *Sand. S. C. Rep.*, 1.)

The plaintiff in this suit has made out no case of special damages to his own property, or any real impediment to his pleasant and profitable enjoyment of it. I have no doubt he has persuaded himself, and conscientiously believes, that his property is to be affected by the fact that this ground is not to be kept open as a common thoroughfore for men and animals to straggle and pass on indiscriminately, without care, cultivation or ornament, and that the prospect from his barn, if at some future time it shall happen to be otherwise occupied and improved, will be injuriously interfered with. But even in his own estimation, his damages are mostly, if not entirely prospective, and such is clearly the opinion of his son John Burnet, while the witness Wilkinson says expressly that for business *eventually* he thinks the change proposed to be made by the defendant, would injure the plaintiff's premises on block 36, but not at present, nor at all for a residence. It is quite clear, as it seems to me, that the injuries which the plaintiff has fixed his mind upon, are entirely fanciful and speculative, and if they are ever to have existence, are remote and

cially without following the strict authority, and paying
a just compensation to the owner of the fee, and then in
a manner prescribed by law. (16 *N. Y.*, 97, 108, 109,
111 ; 12 *Wend.*, 98.)

III. The municipal authorities of the city of Syracuse
neither had power to authorize, nor are they in any way
responsible for the acts of the defendant. The common
council simply permitted, gave a license to defendant
to make the inclosure and set the trees. They took no
action or steps in the matter, but merely granted the
prayer of defendant's petition. The acts complained of
are not within the authority conferred by the city char-
ter on the common council. ( *Walker* v. *Caywood*, 31
*N. Y.*, 51, 63. 2 *Barb.*, 577, 581.)

IV. The inclosing of this triangle was an individual
act of the defendant, and for his own personal benefit.
His petition is signed by no one but himself, does not
ask it for any one but himself, and then for a temporary
or uncertain time, only during the pleasure of the city.
The city authorities do not lay it out as a park, or
for any object as a public work. They neither order,
locate nor direct it ; neither assumed any control or re-
sponsibility in the matter, nor intended to ; they granted

contingent. They are not present and actual, and therefore afford no ground
for an action to redress, or for an appeal to the court by the exercise of its
restraining power by injunction to prevent.

On the other hand, the proof is overwhelming, and by half a dozen wit-
nesses, men of judgment and discrimination, acquainted with the value of real
estate, and nearly all of them residing in the immediate neighborhood of the
premises in question, that the contemplated improvement by the defendant
will not only be a great public benefit, but that instead of injuring the adja-
cent property of the plaintiff, it would be a decided advantage to him, and
actually increase the value of his real estate in the neighborhood. My own
judgment concurs with that of these witnesses, and my conviction clearly is,
that not the public merely, but the plaintiff will be benefited by the proposed
change, and that he will live to see and enjoy its ultimate fruition and develop-
ment. Under such a state of facts it seems to me impossible to maintain this
suit, and the result is that the injunction must be dissolved, and the complaint
dismissed with costs.

Burnet *v.* Bagg.

a license to the defendant, whose purpose was to annex the area of land to his residence, and excluding the plaintiff as well as others of the public therefrom.

V. If the city authorities intended to inclose these grounds and to exclude the plaintiff and others, and the public, we insist it is in conflict with and a *subversion* of the *dedication*, and they acted without authority ; and the acts of the defendant are unjustifiable. He proposes permanently to continue to obstruct and prevent the free ingress and egress to and from the same by the plaintiff, and not only defeat the objects of the dedication, but arrogate to himself, and for his individual benefit, that part of the lands dedicated, and destroy the benefits to the property of the plaintiff. (19 *N. Y.*, 256.

VI. Any pecuniary injury to the plaintiff, no matter how small, by depriving him of a vested right, subjecting him to loss of time or money, imposing additional burdens, obstructing his right of way, is an injury to private right, and he is entitled to the aid of a court of equity to restrain the doing, and a continuance of illegal acts. (22 *Barb.*, 414, 420, 497.)

VII. The learned judge erred in his conclusions of law. 1. In holding that the common council had authority and power to authorize the defendant to do the act complained of. They cannot change the width of a street by authorizing a number of feet to be inclosed for a court yard. Any person owning property on such street may restrain it by injunction. (2 *Barb. R.*, 577. 4 *Paige*, 515.) Nor occupy it for any purpose, except that of travel. (11 *Barb.*, 390.)

VIII. The case made is clearly within the province of the court to grant the relief demanded. A threatened permanent or continuing injury is sufficient ground for an injunction. (2 *Story's Equity*, §§ 920, 923 *and* 927, *p.* 258.)

IX. The learned judge erred in finding there was an

*acceptance* of the dedication. No *evidence* of any acceptance, or official action given on the trial. Neither the city nor village authorities ever took any action in relation to any acceptance of the dedication. (6 *N. Y.*, 257.

X. The fee of the triangle is in the plaintiff, and he is entitled to protect the reserved rights in the fee, and prevent any perversion of the objects of the dedication. (3 *Hill*, 483.)

*Chas. Andrews*, for the respondent. I. The plaintiff stands in the same position, in respect to the remedy in this action, as though the deed of trust from James and others to the plaintiff and Gideon Hawley in 1825, had never been executed. The plaintiff can claim nothing in this action, under or through that conveyance. 1. That conveyance conveyed the lands embraced therein, to Moses D. Burnet and Gideon Hawley, to be held in "joint tenancy and not as tenants in common," with power to Burnet to convey upon the written approval of Mr. James, during his life, and with a like power to Mr. Hawley after Burnet's death. If an action could be maintained by the *owners of the fee* of the land to restrain any use inconsistent with the purpose of the dedication, yet, such action must be brought by the trustees jointly, and does not lie in favor of the plaintiff alone. (4 *Kent's Com.*, 11*th* ed., 360. 5 *Paige*, 542.) 2. The action is not brought upon the theory that the plaintiff, by reason of ownership of the soil, has rights which have been invaded by the defendant. The plaintiff in his complaint asserts no claim as trustee or in behalf of the beneficiaries in the trust. No title to the *locus in quo* is alleged in the plaintiff. 3. The purposes of the trust having been accomplished, the legal estate has reverted in the grantors who created it. (*Nicholl* v. *Walworth*, 5 *Denio*, 385.)

II. The complaint avers the dedication of the triangle

Burnet *v.* Bagg.

in question to the public, "as public grounds, easement and highway." It devolved upon the corporate authorities of the city of Syracuse, as representatives of the public, to control and regulate the use, in any manner not inconsistent with the purpose of the dedication. (*Trustees of Watertown* v. *Cowen*, 4 *Paige*, 510. *Commonwealth* v. *Albenger*, 1 *Wharton*, 469. 2 *Smith's Leading Cases*, 218, 222. 5 *Paige*, 454.) This right would from necessity exist in the corporation without special statutory authority. It is also given by the charter. (*Laws* 1857, *ch.* 63.)

III. The authority given by the common council to the defendant, to improve the triangle in question, and to inclose it for the purpose of a public park, was consistent with the use for which the land was dedicated, and the defendant could lawfully exercise the authority granted, as the agent of the corporation. 1. The purpose of the dedication of the land in question, as alleged and proved, allows any use to be made which shall not interfere with its character as "public grounds, easement or highway." 2. A public park or square is a highway, within the legal meaning of that term. (*Com.* v. *Fish*, 8 *Met.*, 238. *State* v. *Wilkinson*, 2 *Verm.*, 480. 2 *Smith's Leading Cases*, 222. 2 *Ohio Rep.*, 107.) 3. It appears, by the complaint and by the proof, that the triangle is bounded by streets, and is not within the limits of any street as used and travelled. 4. The use to which public grounds may be appropriated may vary from time to time, as public convenience may require, so that the new use shall not be substantially inconsistent with the purposes of the dedication.

IV. If the common council had authority to authorize the proposed improvement, then no action can be maintained by the plaintiff, although he may be injured thereby. The common council having authority to act, the propriety of its action cannot be questioned. (*Williams* v. *N. Y. Central R. R. Co.*, 18 *Barb.*, 247. *Davis*

v. *Mayor, &c.,* 4 *Ker.,* 515. *Chapman* v. *Albany and Schenectady R. R. Co.,* 10 *Barb.,* 360.)

V. If, however, the proposed act of the defendant was unauthorized, yet the plaintiff cannot maintain this action, as it appears from the proof, and is found by the referee, that he will sustain *no special damages* therefrom. This fact must be alleged and proved, to entitle the plaintiff to an injunction. (*Corning* v. *Lowerre,* 6 *John. Ch.,* 439. *Dougherty* v. *Bunting,* 1 *Sand.,* 1. *Parsons* v. *Travis,* 1 *Duer's R.,* 449. *Davis* v. *Mayor,* 4 *Ker.,* 526. *Lansing* v. *Smith,* 8 *Cow.,* 151. *Smith* v. *City of Boston,* 7 *Cush.,* 254. 2 *Story's Eq.,* §§ 924, 925. *Washb. on Easem.,* § 569. 7 *Cush.,* 510.) Nor will the court interfere by injunction in a case of what may be regarded as an *eventual* or *contingent* nuisance. (*Ld. Brougham in* 3d *Mylne & Keene,* 169.)

*By the Court,* MULLIN, J. The triangle in question was dedicated to the public for the purposes of a park or square, and the city of Syracuse, if it accepted the dedication, became seised of it, not in fee, but in trust for the public, charged with the duty of preventing its appropriation to any other uses than such as the donors intended, and of securing to the public the enjoyment of the benefits which it was designed to confer. (*Village of Watertown* v. *Cowen,* 4 *Paige,* 510. *Anderson* v. *Rochester &c. R. R. Co.,* 9 *How. Pr. Rep.,* 553.)

Unless a private person, living in a corporation in which land has been dedicated for a public use, has acquired in some legal way an interest in such easement, from the person dedicating the land, he cannot maintain an action against a person or corporation interfering with or disturbing such easement; unless he sustains thereby some special and peculiar damage, which is not sustained by the great mass of the inhabitants. (*See cases cited, supra.*)

In *Anderson* v. *Rochester &c. R. R. Co.* (9 *How.,*

561) the defendant had instituted proceedings under the general railroad act, to acquire the right to lay its track through a public square in the city of Rochester, a part of which had been dedicated to the public for the purposes of a public square, and a part had been purchased by the city, for the same purpose. A large portion of the price had been assessed upon the owners of lots fronting on the square. The plaintiffs were such owners, and commenced the action to restrain the defendant from laying its track on the square, upon the ground that it would be injurious to the property of such owners. It was also claimed by the plaintiffs that if the track should be laid in the square it could only be upon payment to the plaintiffs of damages for the injury they should sustain thereby. An injunction was granted, but on appeal to the General Term it was vacated. SELDEN, J., lays down the following propositions, which apply, in all their force, to the case before us.

1st. That when land is dedicated to the public use the fee remains in the original proprietors, and the public acquire an easement, merely, coextensive with the purposes to which they were intended to be appropriated ; and if there is a corporation to represent the public, the easement vests in such corporation, which thus becomes a trustee of a use.

2d. That the owners of lots fronting on the square not having had conveyed to them an interest or easement in the square, acquired no interest or easement therein, separate and distinct from that held by the corporation in trust for all the citizens.

3d. If the trustee in trusts of a public nature violates its duty by authorizing an encroachment upon the rights of the public, any of the citizens as *cestuis que trust*, may institute a suit against such trustee, to enforce the trust. But none of the beneficiaries of the trust can proceed in their own names, against a stranger

to the trust, except when the acts of such stranger are productive of some special injury to the parties complaining not common to all the.*cestuis que trust.*

4th. That the location of the track of the defendant's road in the public square was not such a special injury to the plaintiffs as entitled them to maintain the action.

5th. That the benefits afforded by a public square are those of light, air, prospect and of a public promenade ; and that the track of the defendant, if laid and used by its engines and cars, was not such an interference with the enjoyment of either of these benefits as a court of equity would prohibit by injunction. (*Lawrence* v. *Mayor &c. of New York*, 2 *Barb.*, 577. *Corning* v. *Lowerre*,. 6 *John. Ch.*, 439. *Drake* v. *Hudson River R. R. Co.*, 7 *Barb.*, 508.)

In the *Fishmongers' Co.* v. *East India Co.*, (1 *Dick.*, 164,) the Lord Chancellor dismissed the plaintiff's bill, filed to procure an injunction restraining the erection of a statue of George the 3d on a triangular piece of land in front of the plaintiff's premises in the city of London, where several streets met, as calculated to lessen the value of the plaintiff's premises. The chancellor held that the statue would not be a *public* nuisance, as it did not obstruct the carriage way ; that it would be beneficial to the public. It was quite immaterial, he said, whether a majority of the inhabitants of the neighboring houses do or do not object to the erection of the statue — that if its erection did lessen the value of property fronting on the triangle, it was not such a description of private nuisance as would justify the interference of the court on that ground.

If the cases cited be law, the plaintiff cannot maintain this action, because,

1st. Inclosing, and planting trees upon, the land in question does not interfere with the enjoyment by the plaintiff of any of the benefits the laying out of the square was intended to confer.

The only possible enjoyment which inclosing and planting trees could interfere with would be that of prospect. Those of light, air and promenade are in no respect interfered with. And as to the prospect, it seems to me quite obvious that, so far from its being injured, it is largely improved.

But very little, if any, benefit would be conferred by dedicating to the public a piece of ground to be left uninclosed — to be travelled over *ad libitum* by persons and carriages — a common resort for all the stray cattle of the vicinage. Such a place would soon become impassable — offensive to the senses. It would be, in itself, a public nuisance.

The length of this triangle on James street is, I believe, about seventy-five feet; Hawley street is sixty feet; making, together, 135 feet. If this space is to be kept open as a street over which persons may pass at pleasure, and the city should accept it for that purpose, it would be its duty to keep it in repair. It would be no small burthen to keep such a street in proper condition for travel; and I very much doubt whether any corporation would accept of such a gift, charged with such a burthen.

But it was never intended, by those who dedicated this triangle to the public, that it should be so used. It was their purpose to furnish a place which might be inclosed and protected against the inroads of cattle, planted with trees, shrubbery and flowers — a spot pleasant to the eye and an ornament to the street. If the streets in the vicinity had been so narrow as to require for the accommodation of the public or adjoining owners, a larger space for travel, it might be inferred that the object of the dedication was to enlarge the passage way for teams, &c.; but there is no such necessity apparent or proved. And in the absence of evidence of such a purpose on the part of those dedicating the land, we must presume that they intended that it might and would become a beautiful

park, a place affording pleasure to all who might look upon it or enjoy its shade, and not a disgrace to those who gave it, and the people for whose benefit it was given.

It is suggested that the city, in granting the request of the defendant for leave to inclose the triangle, gave him the right to appropriate it to his own use, to the exclusion altogether of the public.

I do not think that the transaction between the defendant and the city is open to such a construction. The defendant's request was, to be permitted *"to set shade trees on, and to inclose a portion of the triangle with a suitable fence."* And this was the permission granted.

It would be a breach of the trust under which the city holds the land in question to permit it to be appropriated to private use; much more to expressly permit such appropriation. A. breach of trust is never presumed. (1 *Cowen & Hill's Notes*, 298, 367-8.)

The presumption may be fairly and reasonably, consistently with the language of the request on the one side, and the resolution granting it on the other, construed to mean a permission to the defendant to inclose, and plant trees upon, said triangle to be used as a public park, for the benefit of the public; and that the defendant's reason for making the request and assuming the expense, was to render a place adjoining his dwelling house, that from the mere want of improvement was not pleasant to the eye, and therefore lessened the enjoyment to be derived from his own premises, a pleasant little public park. If the defendant thus improved it, the public derive the same benefit from it they would have done had the city performed the same service; and they were relieved from the expense.

But if, under the permission thus granted, the defendant should attempt to appropriate this triangle to his own use, the plaintiff could maintain an action against the defendant and the city, to prevent it. But until

Kennedy *v.* Oswego and Syracuse R. R. Co.

that is done, or atttempted, he cannot maintain such an action. (*See cases cited.*)

The court finds that the plaintiff has not sustained any such special damage as entitles him to maintain this suit. While this is rather a finding of a matter of law than a fact, still, within the cases cited, his finding is right. Being compelled to walk or drive a few rods further, by reason of inclosing this triangle, is not an injury which the plaintiff sustains alone. Every person passing from Townsend or Hawley street has the same additional distance to pass over. The depreciation of property is not of itself sufficient to enable the plaintiff to sustain the action. If so, there is no improvement of modern times, the erection or construction of which may not be prevented; as there is none which does not injuriously affect the pecuniary interests of some persons more than others.

As these are the only grounds suggested for sustaining the action, I the judgment of the Special Term was right, and should be affirmed.

Judgment affirmed, with costs.

[ONONDAGA GENERAL TERM, April 2, 1867. *Morgan, Bacon, Foster* and *Mullin,* Justices.