### WHITE et al. v. MOORE.

(Supreme Court, Appellate Division, Second Department. June 24, 1910.)

1. DEDICATION (§§ 19, 35*)—ACCEPTANCE—PARK LANDS.

The owner of land in 1880 filed a map in the office of the county clerk showing land marked "Park" surrounded by streets and lots, and thereafter sold lots with reference to the map. Three years later the village was incorporated, including all the property, and the village expressly accepted the dedication of the park land, and from that time, for over 25 years, the property was not put upon the tax list, the burden of repair, improvement, and maintenance was wholly carried by the village, and during all that time the park was used by the public without interference. *Held*, that these facts showed both a dedication to public use and an acceptance by the public.

[Ed. Note.—For other cases, see Dedication, Cent. Dig. §§ 35, 37–47, 68–71, 75, 76; Dec. Dig. §§ 19, 35.*]

2. DEDICATION (§ 19*)—SALE OF LANDS BY MAP SHOWING PARK.

The rule that, when owners of land in a city or village lay out the same into lots with streets intersecting the same, and sell the lots with reference to such streets, they cannot thereafter deprive the grantees of the benefit of such streets, applies to a similar dedication of urban lands to be used as an open square or public walk or park.

[Ed. Note.—For other cases, see Dedication, Cent. Dig. §§ 35, 37–47; Dec. Dig. § 19.*]

3. DEDICATION (§ 60*)—PUBLIC SQUARE—PROTECTION OF RIGHTS—INJUNCTION.

When lands are dedicated to the use of the inhabitants of a city or incorporated village for a public square, a bill may be filed in the name of the corporation to restrain a nuisance thereon or to protect the equitable rights of the corporation to the use of the public square or land.

[Ed. Note.—For other cases, see Dedication, Cent. Dig. § 119; Dec. Dig. § 60.*]

4. EASEMENTS (§ 61*)—PUBLIC SQUARE—EASEMENT OF ABUTTING OWNERS—INJUNCTION.

The grantee of a lot adjoining a public square who has a special covenant from the original owner of the square that it shall be kept open for the benefit of the lot has an easement therein, and either he or a subsequent grantee may sue to restrain the grantor from violating the covenant, or may join with the corporation in such suit.

[Ed. Note.—For other cases, see Easements, Cent. Dig. §§ 136, 139; Dec. Dig. § 61.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Special Term, Nassau County.

Action by Georgianna B. White and others against Florence A. Moore. From an interlocutory judgment of Special Term sustaining a demurrer to the complaint, plaintiffs appeal. Reversed, and demurrer overruled.

Argued before JENKS, BURR, THOMAS, RICH, and CARR, JJ.

Delphin M. Delmas (Benjamin F. Spellman, on the brief), for appellants.

Harry W. Moore, for respondent.

THOMAS, J. The plaintiffs seek to enjoin the impairment of their easements in a park. In October, 1880, Dubois, the owner of land, caused a map thereof (attached to the complaint) to be filed in the office of the clerk of the county of Queens, wherein the land was, and thereafter sold the lots laid out on said map to persons. The plaintiffs, with the exception of the village of Sea Cliff, are owners of several interests in the land acquired from Dubois or his grantees, and in all instances conveyance was made by reference and according to the map.

The map shows a square marked "Park" surrounded by lots and avenues. The plaintiff the village of Sea Cliff was organized in 1883. At that date Dubois retained his title to the lands, and the complaint alleges that he "did not in any manner or form revoke the dedication of the said lands as a park, made by him as aforesaid," and "immediately after the incorporation of the said village, and while the said dedication remained in full force and effect, the plaintiff village of Sea Cliff duly accepted the dedication of the lands referred to in paragraph 'III' hereof, as a park, and since its incorporation has had the care and control of the same as a park for the benefit of the public, has maintained and repaired the same, and made improvements thereon. During all of said time the said lands have freely and without molestation been used by the general public as a park," and that at no time since the dedication has the land comprising the park been assessed for the purposes of taxation, nor appeared upon the assessment roll for such purposes, nor has any person paid any taxes or assessments thereon for the village of Sea Cliff or the town of Oyster Bay. The defendant, succeeding to the interest of Dubois in the park, since the 22d of June, 1909, has attempted to assume control and dominion of the land in the park and to prevent and deprive the plaintiffs and the general public from using the land as a park. Some of the detailed acts of the defendant in such regard sufficiently support this charge.

The defendant demurs upon grounds in effect reduced to three:

"(1) That all the plaintiffs who are lot owners have separate property, separately acquired, claiming separate easements, and have separate and distinct causes of action and cannot join. (2) That the village of Sea Cliff is not united in interest with any of the other plaintiffs either in possession or title or interest, and attempts to allege a cause of action totally distinct from that of another plaintiff. (3) That not sufficient facts are alleged to constitute a cause of action in favor of any of the plaintiffs."

The complaint traces the easement of each individual plaintiff in the park through the conveyance made primarily by Dubois of such

lot by reference to the map filed by him, and alleges the easement of the village, as follows:

"On information and belief, in making and filing the map as alleged in paragraph 'II' hereof, selling all the lands owned by him with the exception of the premises referred to in paragraph 'III' hereof, with reference and according to the said map, the said Henry Dubois intended to, and did duly, expressly and formally dedicate and surrender the lands referred to in paragraph 'III' to the public for its convenience, use, and enjoyment as a park; that said dedication was valid and binding on himself, his heirs, and assigns. Continuously since the 18th day of September, 1880, the public have freely and without molestation traveled over the said land referred to in paragraph 'III' hereof, and have used the same as a park."

These allegations show the pleader's conclusion that the filing of the map showing a park, the sale of surrounding lots by reference to the map, and free travel by the public over the park and use thereof since 1880, show a dedication to the village. Although the conclusion is limited to these facts, the complaint shows, as already stated, that since 1883 the village has had the "care and control of the same as a park for the benefit of the public, has maintained and repaired the same, and made improvements thereon," and that it has "freely and without molestation been used by the general public as a park." These combined facts show both dedication and acceptance. A park as regards the present question partakes of the nature of a street, and dedication of a street would be inferred from a similar state of facts. The park must remain such for the surrounding households for those licensed to share their privileges. But shall it be said that it is not a park wherein the public have like privilege? The statement in the complaint is that the public have traveled over it and used it as a park for more than 20 years, and that meantime all the burdens that usually accompany ownership—repair, improvement, and maintenance—have been transferred from the owner of the title to the village, so that the former has not been even regarded as a taxpayer for the same. This status has existed for nearly 30 years, undisturbed by such owner. By his deeds the owner proclaimed that the reserved place was a park. By use the public has appropriated it for a public park. The village has treated it as a park maintainable at the public expense, and the owner has viewed without dissent, and with presumed approbation, every assertion of dominion and indication of appropriation. He should not be heard to say at this time that he has not subjected his property interest in the park to the public use. The rule that when owners of land in a city or village lay out the same into lots, with streets and avenues intersecting the same, and sell the lots with reference to such streets and avenues, they cannot thereafter deprive their grantees of the benefit of having such streets and avenues kept open, applies to a similar dedication of urban lands to be used as an open square or public walk or park. Trustees of the Village of Watertown and White v. Cowen & Bagg, 4 Paige, 510, 27 Am. Dec. 80.

When lands are dedicated to the use of the inhabitants of a city or incorporated village for a public square, a bill may be filed in the name of the corporation to restrain a nuisance thereon, or to protect the equitable rights of the corporation to the use of the public square or land. Trustees of the Village of Watertown and White v. Cowen

& Bagg, supra; Burnet v. Bagg, 67 Barb. 154. In the second case it was decided that the owners of lots fronting on a square dedicated to public use, not grantees of an interest or easement therein, could maintain suit against the corporation to enforce the trust, but could not in their own names proceed against a stranger to the trust unless his acts were productive of special injury to them. The grantee of a lot adjoining a public square, who has a special covenant from the original owner of the square, that it shall be kept open for the benefit of the lot, or a subsequent grantee, may file a bill in equity to restrain the grantor from violating the covenant, and may join with the corporation in such suit. Trustees of the Village of Watertown and White v. Cowen & Bagg, supra, where there was such express covenant. Each purchaser of a lot acquired, as above stated, by implied covenant, has an easement that may not be abridged. Johnson v. Shelter Island, etc., Ass'n, 122 N. Y. 330, 25 N. E. 484, where, however, it was held that the map did not designate any portion of the lands as public grounds. The holding in Trustees of the Village of Watertown and White v. Cowen & Bagg, supra, that the abutting owner and corporation may unite, is sustained by the holding that, where a nuisance is a common although not a joint injury to several persons residing in a neighborhood, they may unite as plaintiffs to restrain it. Brady v. Weeks, 3 Barb. 157, where the bill was filed to restrain the use of a building as a slaughterhouse; Peck v. Elder, 5 N. Y. Super. Ct. 126, which was brought to restrain a fat rendering establishment; Murray & Blunt v. Hay, 1 Barb. Ch. 59, 43 Am. Dec. 773, where the chancellor confirmed his opinion in Trustees of the Village of Watertown and White v. Cowen & Bagg, supra. So it was considered that different riparian owners of distinct parcels of riparian land who have a common grievance for an injury of the same kind inflicted at the same time and by the same act, though the injury differs in degree as to each owner, may unite in a common action to enjoin a higher riparian owner from diverting or polluting the stream. Strobel v. Kerr Salt Co., 164 N. Y. 303, 58 N. E. 142, 51 L. R. A. 687, 79 Am. St. Rep. 643.

The interlocutory judgment should be reversed, and the demurrer overruled, with costs. All concur.