(162 App. Div. 236)

## In re SEDGWICK AVE. IN CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department.  May 8, 1914.)

1. EASEMENTS (§ 17*)—EMINENT DOMAIN (§ 149*)—WIDENING AND EXTENDING STREETS—DAMAGES.

Where, pending proceedings by a city to acquire land to widen and extend streets, an owner sold at public auction lots according to a map showing the streets widened and extended as contemplated by the proceedings, but reserved all awards or claims for damages in change of grade or condemnation proceedings, the strips shown on the map as additions to existing streets on completion of the proceedings were subject to an easement for street purposes, and a grantee of the strip could recover only nominal damages.

[Ed. Note.—For other cases, see Easements, Cent. Dig. §§ 45–49; Dec. Dig. § 17;* Eminent Domain, Cent. Dig. §§ 327–331, 401; Dec. Dig. § 149.*]

2. EMINENT DOMAIN (§ 149*)—WIDENING AND EXTENDING STREETS—DAMAGES.

Where an owner of land sold lots according to a map which showed streets as widened and extended, and a public place, as contemplated by pending proceedings by the city to acquire land for widening and extending the streets and the public place, but the land to be taken was a strip on the opposite side of a street and about 100 feet from the lots sold, the purchasers did not acquire an easement over the land, and the owner could recover substantial damages.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 327–331, 401; Dec. Dig. § 149.*]

3. EASEMENTS (§ 17*)—EMINENT DOMAIN (§ 149*)—WIDENING AND EXTENDING STREETS—DAMAGES.

Purchasers of lots as designated by a map showing a street widened as contemplated by a pending proceeding by the city to widen the street

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

acquire an implied easement over the entire width of the street as shown by the map, and the strip sought to be acquired to widen the street is subject to an easement, and the owner can recover only nominal damages, though the strip is located on the side of the street opposite to the lots purchased.

[Ed. Note.—For other cases, see Easements, Cent. Dig. §§ 45–49; Dec. Dig. § 17;* Eminent Domain, Cent. Dig. §§ 327–331, 401; Dec. Dig. § 149.*] .

Laughlin, J., dissenting in part.

Application of the City of New York relative to Sedgwick Avenue, Bailey Avenue, Heath Avenue, and the public place between Heath Avenue and Bailey Avenue. From an order confirming the report of commissioners of estimate and commissioners of assessment, the parties aggrieved appeal. Reversed, and matter sent back to same commissioners.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and DOWLING, JJ.

J. Aspinwall Hodge, of New York City, for appellant.
John J. Kearney, of New York City, for respondent.

SCOTT, J. [1] The portion of the improvement to which this appeal relates is the widening of Bailey avenue between Sedgwick avenue and Kingsbridge Road, and the extension of Heath avenue, and the creation of a public place at the intersection of Heath avenue and Bailey avenue. The latter avenue runs approximately north and south. Between Sedgwick avenue and Heath avenue the land taken for the widening of Bailey avenue is taken from the easterly side of the avenue, as it formerly was; that required for the widening between Heath avenue and the Kingsbridge Road is taken from the westerly side. The land on both sides of Bailey avenue within the limits stated, as well as the land taken for extending Heath avenue and creating the public place, formerly belonged to the Kingsbridge Real Estate Company, and was so owned by it when this proceeding was begun on February 8, 1907. While the proceedings were pending and on May 28, 1907, the Kingsbridge Company offered its property for sale at public auction, using for that purpose, and widely distributing among the bidders and others, maps showing Bailey avenue widened to its full proposed width, and Heath avenue extended and the public place laid out; in other words, anticipating the improvements contemplated in the present proceeding. This left in the ownership of the Kingsbridge Company all of the land proposed to be taken by the city, which so far as Bailey avenue was concerned consisted of strips of land, of varying width lying between the lots offered for sale and Bailey avenue as it was before the widening. The terms of sale annexed to the catalogue and signed by each purchaser contained inter alia the following clauses:

"(7) All awards or claims for awards for damages in change of grade or condemnation proceedings, had or pending, are reserved to the sellers.

"(8) All taxes, assessments and water rates, which at the time of sale, are liens or incumbrances upon said premises (including the assessments for wid-

ening and regulating and grading Bailey avenue, which will be assumed by the sellers) will be allowed out of the purchase money, provided the purchaser shall, previous to the delivery of the deed, produce to the sellers or their attorneys proof of said liens and duplicate receipts for the payment thereof."

It was also stated that purchasers would be given free a certificate of title of the appellant the Title Insurance Company of New York, at whose office the sales were to be completed and the deeds delivered. At the auction sale the Kingsbridge Company disposed of not more than one-half of the lots offered. On June 28, 1907, before any deeds were delivered to purchasers at the auction sale, the Kingsbridge Company conveyed to the appellant the Title Company of New York all of the property belonging to the grantor which the city proposed to take in this proceeding. This deed was recorded on July 2, 1907. Meanwhile and on June 29, 1907, the Kingsbridge Company filed its auction map with the register of the county of New York appending to it the following note:

"Note: The making and filing of this map is subject to all the rights acquired by the purchasers and reserved by the sellers at the auction sale May 28, 1907, under the advertisements for sale and pamphlet of sale, and the terms of sale. Lawyers Engineering & Surveying Company, F. B. Lant, Manager, June 29, 1907."

On July 10, 1907, the deeds to the several purchasers at the auction sale were executed and subsequently recorded. In each deed the property conveyed was described by reference to the auction sale map filed as hereinbefore stated, with a specification of the number or numbers of the lots conveyed as they appeared on that map. Title vested in the city of New York to all of the property taken for the widening of Bailey avenue on July 15, 1910.

The effect of selling the lots as was done in this case was to convey to each purchaser an easement for street purposes over the strip of land lying in front of the lot purchased and which was thereafter to constitute a part of Bailey avenue as widened (Matter of City of New York, Edgewater Road, 138 App. Div. 203, 122 N. Y. Supp. 931, affirmed 199 N. Y. 560, 93 N. E. 1120), and this easement extended not only to the strip immediately in front of the lot conveyed, but to the whole strip to be taken for Bailey avenue for the length of the block containing the lot sold (Reis v. City of New York, 188 N. Y. 58, 80 N. E. 573).

It is claimed by appellant that the Kingsbridge Realty Company successfully avoided this result, which is said to have been achieved by inserting in the terms of sale the provision that the vendor reserved the right to receive the awards for land taken for the Bailey avenue widening, and by conveying to the appellant the land to be taken for the improvement. We are unable to see that either of these circumstances produce the effect claimed for them. The Edgewater Road Case, supra, is authority for the proposition that it was the auction sale, and the manner in which it was advertised and conducted, that fixed the right of purchasers to an easement for street purposes over the projected streets in front of the lots purchased. The appellant who took title with full knowledge of the sale and its circumstances took its conveyance subject to the implied easements created by the

sale. The reservation of the right to receive any awards that might be made for widening Bailey avenue could not have conveyed to any purchaser knowledge or notice that he was to have no easement for street purposes over the strip of land lying between his lot and the established street, which strip was shown on the map by which the sale was made as actually included in the street by which the lot was bounded.

The appellant relies with much apparent confidence on Matter of City of New York—Avenue D, 200 N. Y. 536, 93 N. E. 498. In that case the question was as to the right to substantial damages for the taking of a road, through a farm in Flatbush, known as Avenue D. The appellant in that case, who had been the owner both of the land taken for Avenue D, and the abutting land, sold the latter pending proceedings for condemnation and under circumstances which, save for the reservation in his deeds, would have granted an implied easement over the avenue in favor of the grantees of the abutting land. His deeds, however, contained an express reservation of the right to receive any awards that might be made for Avenue D, and also contained the following clause:

"Nothing contained in this deed shall be construed as dedicating to public use Avenue D or any portion thereof, nor to subject the same to any easement in favor of the party of the second part, it being the intention of the party of the first part to retain the bed of said Avenue D in fee simple absolute. The above covenant shall run with the land."

It was held that the vendor had successfully rebutted any presumption that it was his intention to grant to his vendees any easement over Avenue D, and had consequently effectually avoided impressing upon the land to be taken for that avenue any private easements in favor of the abutting land; but that result was reached, as we read the case, not because the vendor reserved the right to receive the award, for that was not inconsistent with the implied grant of private easements, but in consequence of the express covenant that no easement should result from the conveyance. As to the land taken for the widening of Bailey avenue lying in front of and abutting upon blocks within which lots were sold at the auction, the commissioners, in our opinion, committed no error in awarding only nominal damages, for that land when title passed to the city had been impressed with private easement in favor of lots sold at the auction sale under the circumstances above detailed. Matter of Adams, 141 N. Y. 297, 36 N. E. 318; Matter of Decatur St., 196 N. Y. 286, 89 N. E. 829, 37 L. R. A. (N. S.) 1281; Matter of Schneider, 199 N. Y. 581, 92 N. E. 791; Matter of Titus St., 152 App. Div. 752, 137 N. Y. Supp. 817.

[2] A somewhat different question presents itself respecting the lands conveyed to appellant by the Kingsbridge Company, and taken for the extension of Heath avenue and the creation of a public place lying between Heath avenue, as extended, and Bailey avenue. This land comprised a triangular plot, all of which was taken in this proceeding, and upon which no lot abutted which was sold at the auction sale; the map used at that sale and afterwards filed showing the public place and the extension of Heath avenue as already created and ac-

complished.   The nearest land taken which abutted upon any lot at the auction sale was a narrow strip on the opposite side of Bailey avenue 100 feet or nearly so from the plot under consideration.   The question is whether, under these circumstances, and the exhibition upon the map of the public place as created and Heath avenue as extended created private easements over the land taken for such creation and extension in favor of the purchasers of lots on the opposite side of Bailey avenue and at other points on said avenue shown on the same map.

To support its contention that the plot of land under consideration had, by the circumstances of the auction sale, been so burdened with private easements, that a merely nominal award was justified, the city of New York quotes and relies upon Johnson v. Shelter Island, etc., Ass'n, 122 N. Y. 330, 25 N. E. 484.   In that case the defendant association had acquired a considerable tract of land of which it caused a plan to be made showing streets, avenues, and parks, and subsequently sold and conveyed building lots with reference to said plan. The action was by a purchaser of one of the lots to restrain the erection of an hotel upon a part of the tract not plotted upon the plan but claimed to have been reserved for public use.   In the course of its opinion the court used the following language:

"Now, as to so much of the lands designated upon said map as appropriated to the use of the Shelter Island Community as public grounds, whether designated as streets, avenues, parks, or places, each purchaser of a lot acquired therein distinct and independent rights by implied covenant as appurtenant to the premises granted; an easement, the enjoyment of which the defendant could not thereafter abridge."

This language is sufficiently broad to justify the contention of the city that every purchaser of a lot at the auction sale held by the Kingsbridge Company acquired, by implied covenant, a private easement over every particle of land shown on the auction map as devoted to a public use, whether contiguous or adjacent to the lot sold or remote therefrom.   The language quoted was not, however, necessary to the decision of the case in which it was used, which went in favor of the defendant upon another ground, and the rule attempted to be stated has been much modified in later decisions.

In Reis v. City of New York, 188 N. Y. 58, 80 N. E. 573, the plaintiff had bought lots in Hawthorne street, in the borough of Brooklyn, by reference to a map which showed said Hawthorne street as an open public street for a distance of three city blocks, running from Troy avenue on the east to Brooklyn avenue on the west.   Between these two termini Hawthorne avenue was crossed by Albany avenue and Kingston avenue.   The plaintiff owned lots abutting upon Hawthorne avenue on the easternmost and westernmost blocks.   The city of New York owned all of the land abutting upon Hawthorne avenue along the middle block, and closed that avenue at that point for the purpose of erecting a public building.   Plaintiff claimed to own private easements over Hawthorne avenue, not alone along the blocks within which she owned abutting lots, but also along its whole length as shown upon the

map by which she had purchased. The contention of the plaintiff in that case, as stated in the opinion, was that plaintiff's implied easement extended to every street, avenue, and public place shown on the map by which the lots were sold, and consequently that she had acquired an easement over Hawthorne avenue for its whole length as shown on said map. This claim was disallowed by the Court of Appeals, and it was held that she had acquired an easement over as much of Hawthorne avenue as lay in front of her lots, and as extended in each direction to the next cross street or avenue, and no more. In stating this conclusion the court fortified its opinion by excerpts from and citations of Matter of Twenty-Ninth Street, 1 Hill, 189, where the precise rule is laid down; Elliott on Roads & Streets (2d Ed.) § 120; Regan v. Boston Gaslight Co., 137 Mass. 37; Pearson v. Allen, 151 Mass. 79, 23 N. E. 731, 21 Am. St. Rep. 426—and finally quoted with approval the following, from Hawley v. Mayor, etc., of Baltimore, 33 Md. 270–280:

"The law is now too well settled to admit of any doubt that if the owner of a piece of land lays it out in lots and streets, and sells lots calling to bind on such streets, he thereby dedicates the streets so laid out to public use. This rule is founded upon the doctrine of implied covenants, and the dedication will be held to be coextensive with the right of way acquired as an easement by the purchaser. It is upon the implied covenant in the grant to him that the dedication to public use rests, and such dedication must necessarily be measured by the limits of the right he has acquired by virtue of his grant. * * * The doctrine of implied covenants will not be held to create a right of way over all the lands of a vendor which may lie, however remote, in the bed of a street. The lands must be contiguous to the lots sold, and there must be some point of limitation. The true doctrine is, as we understand it, that the purchaser of a lot calling to bind on a street, not yet opened by the public authorities, is entitled to a right of way over it, if it is of the lands of his vendor, to its full extent and dimensions only until it reaches some other street or public way. To this extent will the vendor be held by the implied covenant of his deed and no further."

Applying the rule thus established to the case at bar, we are of opinion that no purchaser at the auction sale acquired a private easement over any part of the triangular plot of land taken for the extension of Heath avenue and the creation of a public place between and at the intersection of Heath and Bailey avenues. The appellants were therefore entitled to substantial awards for that plot.

[3] The last remaining parcels of land to be considered comprise a strip approximately 40 feet in width except at the southerly end where it tapers down to nothing. It lies on the westerly side of Bailey avenue between Heath avenue and 192d street, and was taken for the widening of Bailey avenue. No lot abutting upon it in that block was sold, but lots were sold in an opposite block. The map by which the sale was made showed Bailey avenue at this point to be 100 feet wide, which it would not be unless the strip now under consideration was included in the avenue, as indeed it appeared to be by the sales map. Unless the purchasers of lots on the opposite of the avenue acquired with their purchases an implied easement over the strip of land opposite, they would not obtain what the sales map represented that they should receive; that is, a lot fronting on a 100-foot street. To this sit-

uation applies the sentence quoted with approval by the Court of Appeals from Hawley v. Mayor, etc., of Baltimore, supra:

"The purchaser of a lot calling to bind on a [public] street, not yet opened by the public authorities, is entitled to a right of way over it, if it is of the lands of his vendor (as it was in the present case) to its full extent and dimensions only until it reaches some other street or public way."

The vendees of lots opposite the strip of land under consideration could not enjoy a right of way of the full extent and dimensions shown on the sales map, unless said strip was covered by the easement. We therefore conclude that the commissioners were right in awarding only nominal damages for the strip of land in question. It follows that the conclusions arrived at by the commissioners and embraced in their report in so far as called in question by this appeal were right save as to the awards for damage parcels Nos. 7, 8, 9, 10A, 10B, 12C, and 12B, comprising the triangular plot of land (or so much thereof as belongs to appellant) taken for the extension of Heath avenue and the creation of the public place, in respect of which the appellant was entitled to substantial rather than nominal damages. To fix these awards and to lay the necessary assessment the report must be returned to the commissioners.

The order appealed from must therefore be reversed, with $10 costs and disbursements, and the matter sent back to the same commissioners to proceed in accordance with this opinion.

INGRAHAM, P. J., and CLARKE and DOWLING, JJ., concur.

LAUGHLIN, J. (concurring in part and dissenting in part). The appellant acquired title to damage parcels 10B, 12C, 7, 8, 9, 10A, and 12B from the Kingsbridge Company after the auction sale by that company, and therefore subject to the rights of the purchasers at such sale. The appellant was awarded nominal damages only, for each of these parcels. Those awards were evidently made on the theory that the parcels are subject to easements in favor of the purchasers at the the auction sale, or of some of them. On the map, on which appellant's grantor induced the purchase of lots at the auction sale, damage parcels 10B and 12C were shown as a "Park," and damage parcels 7, 8, 9, 10A, and the part of 12B not within the lines of Bailey avenue were shown as "Harlem River Terrace" (now Heath avenue). The entire tract evidently had been attractively plotted in a manner to render the lots most desirable and salable to the best advantage; and manifestly the park was not so designated on the theory that it was waste land, or without value, but rather presumptively to enhance the value of the subdivision lots which nearly surrounded it; and the terrace, while probably designed principally for public street purposes, was laid out over the highest land. I am of opinion that purchasers at the auction sale, as between them and their grantor, acquired easements in the park, at least, and were entitled to have the premises so shown on the map kept open for use and enjoyment for park purposes in perpetuity. White v. Moore, 139 App. Div. 269, 123 N. Y. Supp. 1012; s. c., 73 Misc. Rep. 96, 132 N. Y. Supp. 441. See, also, Foster v. City of Buf-

falo, 64 How. Prac. 127; Johnson v. Shelter Island, etc., Ass'n, 122 N. Y. 330, 25 N. E. 484. I am therefore unable to concur with the majority of the court in holding, according to the opinion of Mr. Justice SCOTT, that the damage parcels so marked "Park" are not subject to any easements, and that appellant is entitled to a full award therefor.

With respect to said damage parcels which were shown on the map as part of "Harlem River Terrace," I am of opinion that even under the rule prescribed by the Court of Appeals in Reis v. City of New York, 188 N. Y. 58, 80 N. E. 573, those parcels are subject to easements in favor of some, at least, of the purchasers at the auction sale, whose lands are in the immediate vicinity. The Court of Appeals in that case, by a unanimous vote, held that the easements by implication acquired by a purchaser when his lands bound on other lands of the grantor, described or referred to as a street, are not for ingress or egress over the entire street, but are limited to that part thereof upon which the block embracing his lands bounds, thus affording ingress and egress through the first cross-street, and that all other parts of the street on which his lands bound may be as effectively closed as if the street had been designated or shown, as extending to the first cross-street only. The court was of opinion that in that case the reference in the conveyance to the street was intended merely to give the grantee an easement for ingress and egress; but it recognized that such grants are to be construed according to the intention of the parties.

Moreover, the real basis for the rule applied in the Reis Case is public necessity and convenience when in the exercise of the sovereign power it becomes necessary to appropriate lands held for public street purposes to other uses as is shown by the facts of that case and of the earlier case of Hier v. New York, W. S. & R. R. Co., 40 Hun, 310, affirmed 109 N. Y. 659, 17 N. E. 867, and it should not be applied in favor of the grantor as against his grantee or the public. The point as to whether a grantee of land, induced to purchase by the fact that his land is one of many advantageously and attractively plotted by the same owner into large lots, fronting on broad avenues and perhaps radiating from or leading to a central park designed for the use and enjoyment of all and calculated to enhance the value of all of the subdivision lots, acquires an easement in the public place or park, or in any avenue other than in that part of the one on which his lot is bounded, and in that only for the block, was not presented for decision, nor was any opinion expressed thereon. It is manifest, I think, that in all such cases there would be an intention to give such easements and that the grantees could require the grantor to continue his remaining premises as thus plotted. In the case at bar, I am of opinion that the grantor intended to give some, if not all, of the grantees easements by implication in the other damage parcels to which reference has been made, which were shown on the map, pursuant to which the auction sale was conducted, as part of "Harlem River Terrace." For example, subdivision lots 8A and 9A fronting on "Harlem River Terrace" had no outlet excepting on said terrace, and the map showed that they were accessible to Bailey avenue on the east by going northeasterly through "Harlem River Terrace," and that the only other manner in which the

purchasers thereof could obtain access to Bailey avenue would be by going southerly along the terrace to a cross-street far beyond the premises so divided, and then doubling back by a route several times longer than by the route shown on the map pursuant to which they were induced to purchase. If I am right with respect to the grantees at the auction sale acquiring easements in the "Park," it necessarily follows that they have easements in the streets to enable them to reach and enjoy the Park. I am of opinion therefore that the grantor was not at liberty, as against the purchasers of the auction sale, to close "Harlem River Terrace," and also that such damage parcels were subject to easements in perpetuity in favor of some, at least, of the grantees.

I agree with Mr. Justice SCOTT that all of the other parcels conveyed to the appellant are subject to easements, and that therefore the appellant was not entitled to awards on the theory that they are free from easements; but I am of opinion that the appellant is entitled to substantial, as distinguished from nominal, awards for such of them as are part of Bailey avenue in front of premises the title to which was retained by the grantor, as well as for those in Heath avenue abutting on premises the title to which was retained by the grantor. The purchasers at the auction sale, who acquired title to the fee of the street, have been awarded $25 or more per parcel for such fee. If the Kingsbridge Company, instead of conveying to the appellant, had retained title to the fee in the streets subject to the easements acquired by its grantees, it would have been entitled to awards on the same basis, and at least equal to those made to its grantees. The awards of $25 or more per parcel were made doubtless on the theory that, where the fee to the street is owned by the abutting owner, it is of special value to him for many purposes not inconsistent with the use to which it was subject on account of the private easements, and that would be so even if there had been a dedication for public street purposes, and that he is therefore entitled to a substantial award, notwithstanding the fact that such fee is subject to private easements. City of Buffalo v. Pratt, 131 N. Y. 293, 30 N. E. 233, 15 L. R. A. 413, 27 Am. St. Rep. 592; Matter of 116th Street, 1 App. Div. 436, 37 N. Y. Supp. 508; Rasch v. Nassau Electric R. Co., 198 N. Y. 385, 91 N. E. 785, 36 L. R. A. (N. S.) 645; Mayne v. Nassau Electric R. Co., 151 App. Div. 75, 136 N. Y. Supp. 375.

I am of opinion that, on the evidence adduced before the commissioners, awards should have been made to the appellant in the same amounts as if its grantor had not conveyed and were itself presenting the claims, for it was shown by the city before the commissioners that the conveyance to appellant, although in form a deed, was in effect a mortgage to secure it against the liability it assumed to the purchasers at the auction sale in guaranteeing them against assessments in this proceeding and to protect them with respect to their easements if this proceeding should be discontinued, and that the appellant is obliged to account to its grantor for any awards made herein after satisfying or discharging such liability. That agreement, according to the evidence, rests in parol; but, since the city proved it, I am of opinion that it cannot now be heard to say that the agreement was invalid.

In all other respects I concur in the opinion of Mr. Justice SCOTT.